Marshall, C. J.
 

 Section 2288-2, General Code (109 'O. L., 130), requires a certificate of the director of finance that there is a balance in the appropriations from which the obligation is required to be paid not otherwise obligated to pay precedent obligations, and this work cannot lawfully proceed until that certificate is furnished. Section 1206, General Code, provides:
 

 “Such notices shall state that plans and specifications for the improvement are on file in the offices of the state highway commissioner and the county surveyor, and the time within which bids therefor will be received.”
 

 If this section should stand alone, unmodified and uninfluenced by other sections, and by amendments of other sections of the General .'Code enacted since 1206 was originally enacted, then it would have to be admitted that that section has not been complied with, and that therefore the authorities had not proceeded according to law. It will be observed that that section refers to the state highway commissioner, while, in fact, by subsequent legislative enactments, that particular office no longer exists, but the duties of that office have been transferred to the director of highways, and public works. Section 154-40, General Code (109 O. L., 118). Notwithstanding such change,- the Legislature did not change .the title of that officer in the language of Section 1206.
 

 By the provisions of Section 7182, General Code,
 
 *361
 
 an engineer other than the county surveyor may be appointed by the state highway commissioner, to have charge of highway construction within any county, and in certain counties of the state, including Scioto and Butler, a resident engineer has in fact been appointed. In Scioto county the county surveyor was appointed as such resident engineer. In Butler county a different person was selected. By the provisions of Section 7182, the engineering supervision within the county is under the control of the state director of highways, and in those counties where no resident engineer has been appointed the plans must be placed on file with the county surveyor, but in those counties where a resident engineer has been appointed, and who will therefore be in charge of the work and qualified to exhibit and explain the plans and specifications, the only logical course of action is to place the plans on file with such resident engineer. All these sections are
 
 in pari materia,
 
 and no good purpose would be served by filing the plans with the county surveyor when that officer would have nothing to do with them and would have no knowledge of them, rather than to place them on file with the resident engineer .who would be presumed to have some knowledge of them and would later be called upon to apply them in the construction of the improvement. In relation to such improvements the resident engineer appointed by the director of highways performs the same duties as are imposed by law upon the county surveyor in those counties where no resident engineer has been appointed. The plans should therefore be filed with the officer who performs the services,
 
 *362
 
 and not with, the officer who becomes a sinecure upon the appointment of another officer to perform the services which were theretofore imposed upon him. It should further be noted that the statute makes requirements only as to the published notices and makes no requirement as to the place where the plans and specifications should be kept on file.
 

 The next question relates to the changes and addenda in the plans and specifications between January 19th and February 6th. We will not discuss the nature of the changes and addenda which were' in fact made, because this court is not in any sense expressing an approval of making changes and addenda after the advertisement is begun. It does appear, however, that the one change, which may have been made as late as February 6th, is of a most inconsequential character. .Mistakes should of course be corrected, and explanations necessary to complete understanding of the plans and specifications should be given, and it is of course better to have such changes and addenda made before the letting of the contract than after. It does not appear that any discrimination was exercised in favor of any bidder or against any other bidder. No complaint is made by any bidder. The successful bidder and the director of highways are both satisfied, and it does not appear that any party to the proceeding has been in any wise prejudiced. A conclusive reason why no prejudice can result to any one in this controversy is that the advertisements call for unit bids. In any event, it is quite clear that no obligation is imposed by statute upon the director of finance to inquire into such matters, and that
 
 *363
 
 he is only concerned with the financial part of the transaction. This portion of the answer does not therefore state any defense.
 

 The major question in this controversy is raised by the demurrers to the special defenses alleging that the Governor of Ohio issued several executive orders: First, that he directed the director of highways to reject all bids in cause No. 19035; second, that he directed the director of highways to award the contract in No. 19059 on the concrete type of pavement; and third, that in both oases the Governor directed the director of finance not to issue a certificate that the money is in the fund not appropriated to other obligations.
 

 It is contended by the Governor, and is also contended by the Attorney General in his brief, that the Governor, as the supreme executive of the state, has authority to control the action of the director of highways and the director of finance, and that those officials do not have such independent discretion, or exercise of judgment, as will permit them to act contrary to the Governor’s will, as expressed by an executive order. It is admitted that in each of these projects the director of highways has determined the relators respectively to be the lowest and best bidders. It is also admitted that there is sufficient money in the funds applicable to the state’s share of the cost of these improve-^ ments. The question is therefore squarely presented whether the Governor may control the discretion and judgment of the other executive officers of the state government.
 

 The Constitution, in Section 1, Article III, provides :
 

 
 *364
 
 “The executive department shall consist of a governor, lieutenant governor, secretary of state, auditor of state, treasurer of state, and an attorney general, who shall be elected on the first Tuesday after the first Monday in November, by the electors of the state, - and at the places for voting for members of the general assembly. ’ ’
 

 ¡Section 5, Article III, provides:
 

 “The supreme executive power of this state shall be vested in the Governor.”
 

 Section 6, Article III, provides:
 

 “He may require information, in writing, from the officers in the executive department, upon.any subject relating to the duties of their respective offices, and shall see that the laws are faithfully executed. ’ ’
 

 It is contended that Section 5, Article III, is broad enough to lodge in the Governor paramount authority over all other officers of the executive department of our state government. While the-question is not directly involved in this controversy, it is apparent from a survey of all of the sections of Article III, that, in any event, the secretary of state, auditor, of state, treasurer of state, .and attorney general, all of whom are executive officers, have duties and functions wholly separate and distinct from the duties of the Governor, and wholly independent of his authority. The only relations which the Governor has with the other state, executive officers created by-the Constitution are the authority referred to in Section 6 of Article III, and the power to fill vacancies. Certain powers and duties are given to the Governor by the different sections of Article III of the Constitution. He
 
 *365
 
 may require information from various officers of the executive department; he may communicate with the General Assembly and recommend measures to them; he may call the General Assembly in extraordinary session; he may adjourn the General Assembly in case of disagreement between the two branches; he is made commander in chief of the military and naval forces of the state; and he_ may grant reprieves and pardons. It is contended by the Attorney General that if the mere imposition of a duty or the conferring of a power upon an administrative officer excludes the Governor, then it would be possible for the Legislature', by the process of specifically conferring executive pqwers on the various subordinate officers, to deprive the Governor of all executive power, except with relation to those specific duties mentioned in the 'Constitution. We think this is true and necessarily so. No one contends that the Legislature could take away from the Governor any of. those powers and duties conferred by the Constitution. It would seem equally logical that, as to those powers and duties conferred by the Legislature, the same authority which conferred them can take them away. The power to create presupposes the power to destroy.
 

 . There can be no question of the correctness of this conclusion, unless it is inconsistent with Section 5 of Article III, which vests the supreme executive power of the state in the Governor. The construction contended for by the Governor and the Attorney General would make this section read as though it conferred all executive power upon the Governor, or at least made all executive power
 
 *366
 
 reposed in other executive officers subject to his executive orders. We are of the opinion that supreme executive authority means the highest authority; that is to say, that there is no other authority pre-eminent or of equal eminence. It does not mean that all executive authority is lodged in the Governor, neither does it mean that “supreme authority” is autocratic, absolute, despotic, or arbitrary. Such a construction would be inconsistent with the theory and the purposes of our republican institutions. It would be contrary to the traditions of American democracy. The Governor’s authority is supreme in the sense that no other executive authority is higher or authorized to control his discretion, where discretion is. lodged in him, and yet it is not supreme in the sense that he may dominate the course and dictate the action and control the discretion of other executive officers of inferior rani acting within the scope of the powers, duties, and authorities conferred upon them respectively. The Governor has in many instances the power to appoint without the power to remove except for cause. Louis XIV once declared, “I am the state,” but even monarchial France raised the standard of revolt upon this issue and became a republic. The Governor of Ohio appoints the director of highways and the director of finance, but he does not create either of those offices; neither does he define their powers. It is the policy and the spirit of our institutions that every executive officer is invested with certain powers ánd discretion, and within the scope of the powers granted and discretion conferred his dictum is supreme and his judgment is not sub
 
 *367
 
 ject to the dictation of any other officer. If he does not proceed according to law, or if he exceeds the power conferred, safeguards are in all instances provided for guiding or restraining his action.
 

 In many important instances the law provides for an appeal to higher authority, but when no appeal is provided none exists. If the Legislature had intended that am appeal could be taken to the Governor, that intent could and would have been expressed by legislative action. If such was the intent of the framers of the Constitution, they failed to express that intent. By virtue of Section 1 of Article II of the Constitution of Ohio, general law-making power is conferred upon the legislative branch of the government. The Legislature therefore has the power to invade certain spheres of governmental activity, not forbidden by other provisions of the Constitution, and, although convinced of the wisdom of such governmental activities, might be unwilling to repose the exercise of such authority in the office of the Governor, in addition to the powers already lodged in that office. The Legislature might only be willing to invade such additional fields of governmental activity if the authority for same should be lodged in some commission entirely independent of the Governor’s authority. If the contentions of the Attorney General are sound, the Legislature would be powerless to execute any such design, and the Governor could nevertheless lay a restraining hand upon all commissions so created. The Legislature of Ohio has already created a tax commission, an industrial commission, and a public utilities commission. The duties of all those commissions fall within the exec
 
 *368
 
 utive branch, of the government. Those commissions are purely administrative, and have been so held repeatedly by this court. The sweeping claims made by the Governor and the Attorney General in this case could not be sustained without making all those commissions, and many other governmental agencies which have heretofore operated independently of the governor’s authority, entirely subject to his will. State officials in the executive departments are not in any sense deputies of the Governor, but, on the contrary, possess powers and are charged with duties and have independent discretion and judgment entirely beyond his control, except in those instances, where it is otherwise provided. The powers and duties of the Governor prescribed by the Constitution constitute his irreducible minimum of power. Additional powers can be either conferred or withheld by legislative enactment. In support of the view that the powers and duties of the Governor are subject to the legislative will, except in so far as they may have been defined by the Constitution, we point to Sections 77 to 145, inclusive, General Code. These sections deal with executive functions, and no one has ever before questioned this exercise of legislative power.
 

 The greatest difficulty in the determination of this question arises out of the provisions of the “Administrative Code,” 109 Ohio Laws, 105-135. Section 154-1 refers to the “supreme executive power” .vested in the Governor by the Constitution, and it is stated that, by the Code, “the administrative functions of the state are
 
 organised
 
 as provided in this chapter.” An examination of
 
 *369
 
 that entire enactment discloses that no new executive functions are provided, but the entire purpose of that act is to
 
 organise
 
 the executive functions of the state under a new system, with different distribution of powers, under officers performing the same functions under different names. In Section 154-3 it is stated that:
 

 “The following administrative departments are created; * * * The department of highways and public works, which shall be administered by the superintendent of public works as director thereof.”
 

 In Section 154-8 it is provided that the directors of the respective departments shall have certain powers and duties “with the approval of the Governor,” and as to certain other powers and duties no provision is made whereby the approval of the Governor is required. The only logical deduction which can be made from this fact is that the Legislature intended that, in certain prescribed instances, the directors could only act with the approval of the Governor, and expressly so provided, and, by the omission of the Legislature to so provide in other instances, the Governor’s approval was not necessary. An additional safeguard, and therefore an additional instrumentality in the hands of the Governor, lies in the. fact that, by the provisions of Section 154-4, the directors can hold office only during the pleasure of the Governor. Each of the directors was by the statute made subject to the will of the Governor, if he sees fit to exercise his authority by removal and the appointment of some one who will be more subservient to his will. The Governor therefore has the power to
 
 *370
 
 remove the director of finance if he refuses to obey an executive order, but he does not have such power in relation to the department of highways, because that office is in large measure a constitutional office by reason of including the duties of the superintendent of public works. Section 12, Article VIII of the ’Constitution.
 

 Even if the Governor should remove the director of finance for disobedience of an executive order relating to the furnishing of a certificate, as prayed for in this case, the successor would nevertheless be subject to the order of this court, because it is admitted that the money is in fact in the fund, and the furnishing of the certificate is therefore merely a ministerial duty. By the provisions of Section 154-40, General Code, power is expressly conferred upon the department of highways and public works in a large number of matters, including the construction of highways. That section contains no limitations making the power thereby conferred subject to the approval of the Governor.
 

 It is contended by the Attorney General that this court has recognized the supreme authority of the Governor in the case of
 
 State ex rel. Junk
 
 v.
 
 Herrick,
 
 107 Ohio St., 611, 621, 140 N. E., 314, 317. That part of the opinion referred to is as follows:
 

 “It is therefore more reasonable to conclude that the Governor is supreme over all the departments,
 
 in so far as is provided by law,
 
 and that each of the departments has its own special functions; the essential policies of each being separate and distinct and free from control of the others.”
 

 The italicized portion of the above-quoted matter
 
 *371
 
 makes that quotation in entire harmony with the conclusions we have reached in this case. The Governor has such power as has been conferred by the Constitution and by the Legislature, and such incidental powers as may be necessary to carry into effect the powers expressly conferred, and all other executive officers of the state government likewise have powers and authority which have been conferred by the Constitution and by the Legislature, and each is independent of the other; and the Governor may not control the discretion and judgment of any other state officer within the limits of the power conferred upon such officer, unless the power of review or the requirement of approval has been imposed in the act which creates such other state officer and defines his powers.
 

 The writ of mandamus will therefore be awarded in both cases as prayed for.
 

 Writs allowed.
 

 Jones, Matthias, Day, Allen and Robinson, JJ., concur.
 

 Kinkade, J., not participating.