COUNTY EXECUTIVE OF PRINCE GEORGE'S
COUNTY ET AL. *v.* JANE DOE ET AL.

[No. 1, September Term, 1981.]

*Decided November 3, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Robert B. Ostrom, County Attorney,* and *Michael P. DeGeorge, Associate County Attorney,* with whom was *Michael O. Connaughton, Deputy County Attorney,* on the brief, for appellants.

*Larry A. Ceppos* and *Maurice R. Dunie,* with whom were *Martin H. Freeman* and *Bulman, Dunie, Freeman, Burke & Feld* on the brief, for appellee Executive Committee of the Medical Staff of Prince George's General Hospital et al. and by *Carla S. Rappaport,* with whom were *Stephen A. Friedman, Shelly E. Mintz* and *Baskin & Sears* on the brief, for other appellees.

MURPHY, C. J., delivered the opinion of the Court.

At issue in this case is the legality of an executive order promulgated by Lawrence Hogan, the County Executive of Prince George's County, Maryland, prohibiting the performance of abortions at all county-owned or operated hospitals unless necessary to save the life of the mother. The Circuit Court for Prince George's County (Chasanow, J.), acting upon declaratory judgment actions filed by the executive committee of a county hospital, a number of physicians, and a pregnant woman denied an abortion at a county hospital, enjoined enforcement of the executive order, declaring it null and void as constituting an exercise of "policy and lawmaking powers specifically delegated to the County Council" under the County Charter. The County Executive appealed to the Court of Special Appeals. We granted certiorari prior to decision by that court to consider the important issues raised in the case.

The executive order recited that it was adopted pursuant to power vested in the County Executive by Articles IV and V of the County Charter and by Maryland Code (1957, 1980 Repl. Vol.), Art. 43, § 556E. In introductory paragraphs, the order states that under the provisions of § 556E (b), "no hospital shall be required to permit the performance of any medical procedure that results in termination of pregnancy"; [1] that the Supreme Court in *Harris v. McRae,* 448 U.S. 297, 100 S. Ct. 2671, 65 L. Ed. 2d 784 (1980), "reaffirmed the legitimate governmental interest in protecting the life of an unborn child"; that it was in the public interest of the citizens of the county "to take every reasonable means to protect and defend human life" and not to permit county funds to be utilized for the performance of abortions. The executive order thereafter stated that abortions at county hospitals were prohibited unless necessary to save the life of the mother, and that detailed reports must be completed of every abortion performed in a county hospital,

---

1. Section 556E (b) provides in part:

"No hospital, hospital director or governing board shall be required to permit the performance of any medical procedure that results in termination of pregnancy, sterilization or artificial insemination, within its institution . . . ."

together with "a justification for the performance of the abortion in accordance with the standard set forth in this Order."

In declaring the executive order null and void, Judge Chasanow found as a fact that no county funds were appropriated to further abortion services at any county hospital; that the County Executive, prior to adopting the order, did not consult with either the boards of directors of the county hospitals or with the Prince George's County Hospital Commission; and that none of these bodies or the County Council took any action to prohibit abortions. Judge Chasanow found from the evidence that the executive order was based on the County Executive's "personal and moral persuasion" and the legal advice provided to him by the County Attorney. After noting that under the County Charter the legislative and executive branches of the county government are vested in separate and distinct departments, Judge Chasanow said the crucial issue was whether the County Executive, in adopting the executive order, "exercised his executive authority or whether he was in fact exercising legislative authority which is exclusively delegated to the County Council." The trial judge noted that under our cases the test for determining whether a power is legislative or executive turns on whether its exercise makes a new law of general application prescribing a new plan or policy, or is one which merely looks to or facilitates the administration, execution or implementation of a law already in force and effect. Judge Chasanow determined that the executive order was not adopted pursuant to any legislative authorization nor as a measure to implement the provisions of Art. 43, § 556E. He concluded that the executive order represented a policy decision not provided for nor made pursuant to any guidelines found in § 556E. He said the order "formulated policy and is therefore legislative in purpose" in that it represented a determination by the County Executive that it was in the public interest not to support abortions and was a reasonable measure to protect and defend human life. Judge Chasanow held that these decisions "certainly seem to represent policy decisions, not the mere implementation of a legislative

mandate." He concluded that legislative or policy decisions can only be made by the County Council and thus the executive order was beyond the authority of the County Executive.

The County Executive argues before us, as he did below, that the executive order represents an exercise of executive, not legislative power. He contends that the order does not adopt a new plan or policy but simply regulates procedures to be performed in county hospitals in implementation of existing laws and Charter provisions, *i.e.,* Article 43, § 556E; Code (1957, 1981 Repl. Vol.), Article 25A, § 5 (C), authorizing charter counties to maintain and control hospitals and to make regulations for their government and conduct; and §§ 402 and 501 of the Charter, vesting the executive power of the county in the County Executive and subjecting county agencies to his direction, supervision and control. The County Executive maintains that the administration of county hospitals is an executive branch function; that all executive power under the Charter is lodged in him; that he is empowered by the Charter to direct, supervise, and control the actions of all executive branch agencies; that he has the responsibility to carry on the day-to-day business of the county and to make decisions concerning the services to be offered by county hospitals; and that he may, as authorized by § 556E, execute the directive of that statute by prohibiting the performance of abortions at county hospitals.

The Prince George's County Charter, adopted in 1970, is the organic law of the county. In effect, it is a local constitution which forms the framework for the organization of the local government; it is the instrument which establishes the agencies of local government and provides for the allocation of powers among them. *See Cheeks v. Cedlair Corp.,* 287 Md. 595, 415 A.2d 255 (1980); *Ritchmount Partnership v. Board,* 283 Md. 48, 388 A.2d 523 (1978). Whether the executive order exceeded the authority of the County Executive is determined in the first instance by the provisions of the County Charter. Even assuming that the order exercised executive rather than legislative power, nevertheless, we

think its promulgation in this case was beyond the authority vested in the County Executive under the Charter.

All the rights and powers of local self-government and home rule are vested by Article I, § 102 of the Charter in "the County Council, the County Executive, and other agents, officers, and employees of the County acting under their respective authorities, or under such other authority as may be provided by this Charter or the laws of this State." Article III of the Charter entitled "Legislative Branch" provides in § 302 that all legislative powers which may be exercised by the county shall be vested in the County Council. Article IV of the Charter entitled "Executive Branch" provides in § 401 that the "Executive Branch of the County government shall consist of the County Executive and all officers, agents, and employees under his supervision and authority." Section 402 of Article IV provides that "[a]ll executive power" vested in the county "shall be vested in the County Executive who shall be the chief executive officer of the County and who shall faithfully execute the laws." Under this section, the powers, duties and responsibilities of the County Executive "include, but shall not be limited to," submitting an annual report on county activities, together with a detailed financial statement; providing the County Council with information concerning the executive branch; recommending legislation; appointing the head of each agency of the executive branch and the members of all boards and commissions, subject to Council approval; preparing an executive pay plan; investing surplus county funds; signing all deeds and contracts on the county's behalf; and enforcing county laws.[2] Article V of the Charter entitled "Administrative Organization" provides in § 501:

> "Except as otherwise provided in this Charter or in State law, all agencies of the County government shall be subject to the direction, supervision, and control of the County Executive."

---

**2.** The County Executive's authority for budget preparation and submission is contained in Article VIII of the Charter.

Section 502 provides:

> "All functions and duties of the executive branch shall be allocated among and within such agencies as may be established by law."

Section 503 authorizes the County Executive, by executive order, subject to approval of the County Council, to propose changes in the organization of the executive branch, including the establishment or abolition of agencies, and in the assignment of functions, powers, and duties among agencies.

Article X, § 1017 (d) provides that the word "law," as used in the Charter, includes ordinances of the County Council and statutes enacted by the General Assembly of Maryland.

Article XII, § 1209 provides that the Administrative Organization established by the "Schedule of Legislation accompanying this Charter shall not be altered or amended before June 30, 1972." [3] The accompanying "Schedule of Legislation" recites that its purpose "is to allocate the functions and duties of the executive branch among and within the herein established service offices and operating departments of the County government." The Schedule of Legislation mandates the creation of fourteen principal offices and departments of the executive branch including in § 9 a Department of Hospitals and Health Services headed by a Director who, in cooperation with Prince George's County Hospital Commission, is made responsible "for developing a county wide system of coordinated hospital . . . and other health care services."

It is manifest that the Charter of Prince George's County has established a system of county government in which the executive branch and the legislative branch are separate and distinct, with neither having control over the other. *See Eggert v. Montgomery County Council,* 263 Md. 243, 282 A.2d 474 (1971); *Hormes v. Baltimore County,* 225 Md. 371, 170 A.2d 772 (1960). It is equally clear that the County

---

**3.** The Schedule of Legislation was placed before, and approved by, the voters of Prince George's County at the same time as the electorate approved the new Charter.

Executive is the directing head of the general administration of county affairs, with the duty, power and obligation to carry on the day-to-day business of the county. *Hormes, supra,* 225 Md. at 376. On the other hand, the Charter empowers the County Council, acting by ordinance not inconsistent with the Charter, to assign functions, duties and responsibilities to executive branch agencies in the exercise of the Council's power to enact laws for the government of the county. All such agencies are subject to the direction, supervision and control of the County Executive in carrying out his responsibility to faithfully execute the laws enacted by the County Council.

Pursuant to the legislative powers vested in the County Council, the Prince George's County Hospital Commission was created by § 12-131 of the Prince George's County Code (1975) and charged "with the duty of developing and maintaining a County-wide system of coordinated . . . hospital and hospital related health care services." The Commission was further authorized to adopt bylaws and to coordinate county hospitals "subject to guidelines established by law." The Commission is empowered to exercise a wide range of management authority over county hospitals, as particularized by detailed provisions set forth in § 12-131. The County Council, in § 12-132, designated the Director of the Department of Hospitals and Health Services as the Executive Director of the Hospital Commission and made him "responsible to the County Executive for the satisfactory implementation of the policies and directives of Prince George's County and the Hospital Commission." A board of directors for each county hospital was created by § 12-133 and made responsible to the Hospital Commission. Each board is directed by § 12-133 to "establish policy for the internal operation of . . . [the hospital] facility" and is given authority "to adopt bylaws subject to approval by the Hospital Commission." Each board of directors is charged with "[t]he general management of the Hospital" and with the "[a]doption of policy" for the hospital. Section 12-133 enumerates, in twenty-one detailed paragraphs, specific duties and responsibilities of the board covering all facets of

hospital operation and management, including the making of rules and regulations governing the administration, care and treatment of patients and the development of a philosophy of service embodying the principle of optimum patient care for all citizens regardless of ability to pay. Section 12-133.4 provides that public notice of all meetings of the Hospital Commission and Boards of Directors shall be given and that the meetings shall be open to the public (with exceptions not here pertinent).

The County Council, by law, has thus established a comprehensive health care program for the county and has, pursuant to § 502 of the Charter, allocated the management and policy-making authority over county hospitals to the Department of Hospitals and Health Services, the Hospital Commission and the Boards of Directors of county hospitals. These agencies, although part of the executive branch of government, are vested with governmental authority which is distinct from that of the County Executive. The County Executive is bound by the Charter to direct, supervise and control the implementation of the Council's allocation of duties and functions to these agencies as part of his responsibility to faithfully execute the laws enacted by the County Council. The vesting of this power in the County Executive does not, however, constitute a grant of unbridled authority permitting him to usurp, nullify or supersede, at his pleasure, functions and duties committed by law to other executive branch officers, or to refuse to observe existing laws enacted by the Council. In other words, although the County Executive's authority over the executive branch of the county government is supreme in the sense that there is no higher executive authority, he may not ordinarily dictate the actions and preempt the discretion of other county executive officers, acting within the scope of the powers, duties and authority conferred upon them by ordinance lawfully enacted by the Council.[4] *See Rapp v. Carey,* 44 N.Y.2d 157,

---

4. The County Executive may, of course, exercise his executive veto power over ordinances passed by the Council with which he is not in agreement. *See,* Charter, § 411.

375 N.E.2d 745 (1978); *State ex rel. v. Baker,* 112 Ohio St. 356, 147 N.E. 501 (1925). Without intimating one way or the other as to its legal significance, we observe that neither the Hospital Commission nor the Boards of Directors were consulted by the County Executive prior to the adoption of this executive order and there was no public meeting of either of these bodies to consider the wisdom of banning abortions in county hospitals, either under the authority of § 556E or otherwise.

Under the circumstances of this case, the executive order constitutes an unlawful encroachment upon the validly delegated authority of the Hospital Commission and the Boards of Directors and was beyond the authority of the County Executive to promulgate under the Charter; it simply cannot be reconciled with the exercise by the County Council of its power to make laws governing the operation and administration of county hospitals.

The provisions of § 556E of Art. 43 do not provide the County Executive with greater authority to promulgate an executive order prohibiting abortions at county hospitals than he possesses under the Charter. That statute simply insulates hospitals, hospital directors and hospital governing boards from being required to perform abortions. It is not an express grant of authority to the County Executive to ban abortions in county hospitals or to supplant the authority of the Hospital Commission and Boards of Directors with his own edict without regard to the management and policy-making role of their governing bodies. Accordingly, we agree with the trial court that the executive order does not implement and is not authorized by § 556E.

In view of our disposition of this case, we do not consider other questions raised by the parties but not passed upon by the lower court, *i.e.,* whether the executive order conflicts with or is preempted by public general laws enacted by the General Assembly of Maryland or whether the executive order constitutes an unconstitutional infringement of the asserted right to an abortion.

*Judgments affirmed with costs.*