479 A.2d 352

**COUNTY EXECUTIVE OF PRINCE GEORGE'S COUNTY et al.**

v.

**Jane DOE et al.**

**No. 140, Sept. Term, 1982.**

Court of Appeals of Maryland.

Aug. 20, 1984.

446

Michael P. DeGeorge, Associate County Atty., and by Robert B. Ostrom, County Atty., Upper Marlboro (Michael O. Connaughton, Deputy County Atty., Upper Marlboro, on brief), for appellants.

Stephen A. Friedman, Hyattsville (Smith, Joseph, Greenwald & Laake, Hyattsville, and Carla S. Rappaport, Washington, D.C., on brief), for appellees.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

ELDRIDGE, Judge.

The issue in this case concerns the circumstances under which a Maryland court may award an attorney's fee under 42 U.S.C. § 1988 when a party, in seeking particular relief, relies both on state law, under which an award of an attorney's fee is not authorized, and on a federal statute, where an attorney's fee is recoverable under § 1988, and prevails upon the state law ground.[1]

I.

In *County Exec., Prince Geo's Co. v. Doe,* 291 Md. 676, 436 A.2d 459 (1981) (hereafter referred to as *County Executive I*), this Court held that an executive order promulgated by the County Executive of Prince George's County, which prohibited the performance of abortions at hospitals owned or operated by the County, exceeded the County Executive's authority under the Prince George's County Charter and was therefore invalid. A brief review of the pertinent facts underlying *County Executive I* is in order.

---

**1.** The Civil Rights Attorney's Fees Awards Act of 1976, codified as the final sentence of 42 U.S.C. § 1988, provides as follows:

"In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

Lawrence Hogan, then the County Executive of Prince George's County, issued an executive order on August 11, 1980, which prohibited the performance of abortions at all county-owned or county-operated hospitals, except those abortions necessary to save the life of the mother.[2] On October 7, 1980, a bill of complaint for declaratory and injunctive relief was filed in the Circuit Court for Prince George's County by two licensed obstetrician-gynecologists with staff privileges at the Greater Laurel-Beltsville Hospital and by a pregnant woman referred to as Jane Doe, who desired an abortion at that hospital. Named as defendants were Hogan and Prince George's County. Shortly thereafter, a second suit was filed against the same defendants challenging the validity of the executive order. The plaintiffs in this second suit were the Executive Committee of the Medical Staff at Prince George's General Hospital and individual members of the Committee. The two suits were consolidated by order of the circuit court on November 21, 1980, and were each resolved by the same opinion and order of the circuit court.

The relief sought in the consolidated action was that the court declare the executive order null and void and enjoin the defendants from enforcing it. The attack upon the executive order was grounded upon alternate legal theories. The plaintiffs claimed that the order violated the federal constitutional right to choose an abortion, recognized in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Consequently, according to the plaintiffs, they were entitled to relief under 42 U.S.C. § 1983.[3] The plaintiffs also con-

---

**2.** At the time there were two hospitals in Prince George's County which the County owned and operated. These were Prince George's General Hospital and the Greater Laurel-Beltsville Hospital. In addition, there were nine other hospitals and thirteen abortion clinics in Prince George's County, and neighboring Montgomery County and Washington D.C., at which a woman could receive an abortion, including one other hospital and three clinics in Prince George's County itself.

**3.** The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides as follows:

tended that the order was not authorized by the Prince George's County Charter and that the order conflicted with or was preempted by enactments of the Maryland General Assembly.

On December 17, 1980, the circuit court declared the executive order "null and void" and enjoined its enforcement, holding that the County Executive lacked authority under the County Charter to issue the order. The defendants appealed to the Court of Special Appeals, and we issued a writ of certiorari prior to a decision by the intermediate appellate court. In an opinion by Chief Judge Murphy, this Court affirmed the declaratory judgment and injunction. After a detailed analysis of the respective powers of the County Council, the County Executive and the County Hospital Commission under the Charter of Prince George's County, we held (291 Md. at 685, 436 A.2d 459):

"Under the circumstances of this case, the executive order constitutes an unlawful encroachment upon the validly delegated authority of the Hospital Commission and the Boards of Directors and was beyond the authority of the County Executive to promulgate under the Charter; it simply cannot be reconciled with the exercise by the County Council of its power to make laws governing the operation and administration of county hospitals."

Because of our holding in *County Executive I* that the executive order exceeded the authority of the County Executive under the County Charter, we expressly declined to reach the federal constitutional issue which formed the

---

"§ 1983. Civil action for deprivation of rights

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

basis of plaintiffs' § 1983 action. 291 Md. at 685, 436 A.2d 459.

 After our affirmance in *County Executive I,* the plaintiffs filed a motion in the circuit court for an attorney's fee award pursuant to 42 U.S.C. § 1988.[4] The circuit court held that plaintiffs were entitled to an award of an attorney's fee under § 1988, and it awarded a fee in the amount of $32,175.00. The court applied a two part test in deciding to award an attorney's fee. The court first found that the plaintiffs' asserted federal constitutional cause of action in the earlier case arose from the same nucleus of operative facts as the state law cause of action upon which plaintiffs prevailed. The court further found that the federal constitutional argument was a "substantial" one.

The defendants, Prince George's County and the County Executive, took an appeal from the court's fee award, and we issued a writ of certiorari prior to any proceedings in the intermediate appellate court.

The defendants' principal contention is that the circuit court should not have awarded any attorney's fee. The defendants also argue that, if an attorney's fee award was permissible, the amount of the award in this case was "excessive and unreasonable."

In support of their position that no fee award should have been made, the defendants make two arguments. Their

---

4. After final judgment in a declaratory judgment action, the prevailing party may then maintain a separate action for an attorney's fee where such fee is authorized by law. *Bankers & Ship. Ins. v. Electro Enter.,* 287 Md. 641, 646, 415 A.2d 278 (1980). *See also Pappas v. Pappas,* 287 Md. 455, 465, 413 A.2d 549 (1980). Additionally, under 42 U.S.C. § 1988, a claim for an attorney's fee, while an integral part of the remedy under 42 U.S.C. § 1983, is viewed as a collateral matter from the § 1983 action; thus the claim for an attorney's fee may be brought following a final judgment in a § 1983 action. *See Bernstein v. Menard,* 728 F.2d 252 (4th Cir.1984); *Gumbhir v. Kansas State Bd. of Pharmacy,* 231 Kan. 507, 646 P.2d 1078, 1085–1086 (1982), *cert. denied,* 459 U.S. 1103, 103 S.Ct. 724, 74 L.Ed.2d 950 (1983). *See also White v. New Hampshire Dept. of Employment Sec.,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982).

chief argument is that, when a plaintiff in a state court asserts a cause of action under 42 U.S.C. § 1983 along with a cause of action under state law, as alternate grounds for essentially the same relief, and when the plaintiff prevails on the state law ground but there is no judicial decision on the § 1983 ground, an attorney's fee under 42 U.S.C. § 1988 should never be awarded. The defendants concede that, under these circumstances, the federal law standards under § 1988 ordinarily contemplate an attorney's fee award if the unresolved § 1983 question is "substantial" and is based on the same facts as the state law ground.[5] Nevertheless, relying primarily upon Maryland's "policy against awarding attorneys' fees to prevailing parties except in exceptional circumstances" (brief p. 8), the defendants assert that a Maryland court should award an attorney's fee under § 1988 only when a plaintiff prevails on the § 1983 cause of action. While acknowledging that their argument is contrary to the federal law standards under § 1988, the defendants maintain that a state court need not apply the entire federal law in this regard. Alternatively, the defendants contend that, even under the federal law test for awarding an attorney's fee in a § 1983 action, an attorney's fee award in this case was erroneous because the § 1983 "constitutional issues pleaded in this case were not 'substantial' " (brief p. 19).

## II.

■ First, we flatly reject the defendants' argument that we should decline to follow the federal law standards with respect to an award of an attorney's fee under § 1988, when a plaintiff asserts a § 1983 ground and a state law ground for the same relief, and prevails on the latter.

---

**5.** Very recently the Supreme Court set forth an additional "requirement that a [§ 1983] claim for which fees are awarded be reasonably related to the plaintiff's ultimate success." *Smith v. Robinson,* —— U.S. ——, ——, 104 S.Ct. 3457, 3467, 82 L.Ed.2d 746 (1984). *See Lund v. Affleck,* 587 F.2d 75, 77 (1st Cir.1978).

The Civil Rights Act of 1871, 42 U.S.C. § 1983, contains no language relating to the jurisdiction of particular courts. Consequently, in *Martinez v. California*, 444 U.S. 277, 283 n. 7, 100 S.Ct. 553, 558 n. 7, 62 L.Ed.2d 481 (1980), the Supreme Court took the position that an action under § 1983 could be brought in state courts.[6] Later, in *Maine v. Thiboutot*, 448 U.S. 1, 3 n. 1, 100 S.Ct. 2502, 2503 n. 1, 65 L.Ed.2d 555 (1980), the Court reiterated that actions under § 1983 may be brought in state courts. In addition, the *Thiboutot* opinion rejected the argument, made by the attorneys general of several states, that the attorney's fee provision of 42 U.S.C. § 1988 did not apply in state courts. 448 U.S. at 10–11, 100 S.Ct. at 2507. The Court held that "the fee provision is part of the § 1983 remedy whether the action is brought in federal or state court." *Id.* at 11. As the circuit courts in Maryland generally have jurisdiction over all causes of action except to the extent the General Assembly or the Constitution limit that jurisdiction or con-

---

**6.** The Court in *Martinez* quoted from *Testa v. Katt*, 330 U.S. 386, 391, 67 S.Ct. 810, 813, 91 L.Ed. 967, 172 A.L.R. 225 (1947), which in turn quoted from *Claflin v. Houseman*, 3 Otto 130, 93 U.S. 130, 137, 23 L.Ed. 833 (1876), that where

"'"an act of Congress gives a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a State court."'"

The opinion in *Claflin* continued as follows (93 U.S. at 137):

"The fact that a State court derives its existence and functions from the State laws is no reason why it should not afford relief; because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the State as it is to recognize the State laws. The two together form one system of jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are ... courts of the same country, having jurisdiction partly different and partly concurrent."

The Supreme Court in *Martinez* did not decide whether state courts must entertain § 1983 claims, although, citing *Testa v. Katt, supra,* it "note[d] that where the same type of claim, if arising under state law, would be enforced in the state courts, the state courts are generally not free to refuse enforcement of the federal claim." 444 U.S. at 283 n. 7, 100 S.Ct. at 558 n. 7.

*See also The Federalist,* No. 82 (Alexander Hamilton, 1788).

fer it exclusively upon another tribunal,[7] and as the General Assembly has not attempted to exclude § 1983 actions from the jurisdiction of the circuit courts, we have taken the position that § 1983 actions may be brought in the Maryland circuit courts. *DeBleecker v. Montgomery County,* 292 Md. 498, 500, 511–513, 438 A.2d 1348 (1982).

It has long been settled that when an action is brought in a state court to enforce rights or claims under federal law, the Supremacy Clause of the United States Constitution requires that federal law and policy be applied by the state court. *Maine v. Thiboutot, supra,* 448 U.S. at 11, 100 S.Ct. at 2508; *Martinez v. California, supra,* 444 U.S. at 284, 100 S.Ct. at 558; *Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967, 172 A.L.R. 225 (1947); *Garrett v. Moore-McCormack Co.,* 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942); *Pine Street Trading v. Farrell Lines,* 278 Md. 363, 379–380, 364 A.2d 1103 (1976); *Frazier v. Waterman S.S. Corp.,* 206 Md. 434, 448, 112 A.2d 221 (1955); *Standard, Etc. v. Rukert Ter. Corp.,* 193 Md. 20, 24, 65 A.2d 304 (1949); *Albright v. P.R.R. Co.,* 183 Md. 421, 426–431, 37 A.2d 870, *cert. denied,* 323 U.S. 735, 65 S.Ct. 72, 89 L.Ed. 589 (1944). As explained by the Supreme Court in *Mondou v. New York, N.H. & H.R. Co.,* 223 U.S. 1, 57, 32 S.Ct. 169, 178, 56 L.Ed. 327 (1912):

> "The suggestion that the act of Congress is not in harmony with the policy of the state ... is quite inadmissible, because it presupposes what in legal contemplation does not exist. When Congress, in the exertion of the power confided to it by the Constitution, adopted that act, it spoke for all the people and all the states, and thereby established a policy for all. That policy is as much the policy of Connecticut as if the act had emanated from its own legislature, and should be respected accordingly in the courts of the State."

7. Maryland Code (1974, 1984 Repl.Vol.), § 1–501 of the Courts and Judicial Proceedings Article.

*See Reynolds Elec. v. United Bhd.*, 81 Nev. 199, 207, 401 P.2d 60, *cert. denied*, 382 U.S. 905, 86 S.Ct. 242, 15 L.Ed.2d 158 (1965) (state court suit under § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), where the court stated that it would either "afford a remedy to effectuate federal policy or . . . deny all requested relief, should the relief sought contravene federal policy").

■ Moreover, and contrary to the defendants' argument in the present case, a state court exercising jurisdiction in a federal cause of action may not refuse to apply federal law in one particular respect where such law is deemed inconsistent with "state policy." Instead, the *entire* federal substantive law is applicable. As the Supreme Court pointed out in *Garrett v. Moore-McCormack Co.*, *supra*, 317 U.S. at 243, 63 S.Ct. at 249, where a state court action is brought to enforce "asserted rights granted by federal law," the state court is "required to give to [the plaintiff] the *full benefit* of federal law." (Emphasis added.) The "state court [is] bound to proceed in such manner that *all* the substantial rights of the parties under controlling federal law would be protected." *Id.* at 245, 63 S.Ct. at 251, emphasis added.

■ These principles are reflected in the Supreme Court case dealing with attorney's fee awards in state court actions under 42 U.S.C. § 1983. As previously mentioned, the Supreme Court in *Maine v. Thiboutot*, *supra*, rejected the argument that the attorney's fee provision of 42 U.S.C. § 1988 did not apply in state court actions under § 1983. The Court's reasoning was that the attorney's fee provision of § 1988 was an integral part of the § 1983 remedy and that, under the Supremacy Clause, the Supreme Judicial Court of Maine properly afforded the full federal law remedy. The court thus stated (448 U.S. at 10–11, 100 S.Ct. at 2507–2508):

"Several States, participating as *amici curiae*, argue that even if § 1988 applies to § 1983 claims alleging

deprivations of statutory rights, it does not apply in state courts. There is no merit to this argument. As we have said above, *Martinez v. California*, 444 U.S. 277 [100 S.Ct. 553, 62 L.Ed.2d 481] (1980), held that § 1983 actions may be brought in state courts. Representative Drinan described the purpose of the Civil Rights Attorney's Fees Awards Act as 'authoriz[ing] the award of a reasonable attorney's fee in actions brought in State or Federal courts.' 122 Cong.Rec. 35122 (1976). And Congress viewed the fees authorized by § 1988 as 'an integral part of the remedies necessary to obtain' compliance with § 1983. S.Rep. No. 94–1011, p. 5 (1976). It follows from this history and from the Supremacy Clause that *the fee provision is part of the § 1983 remedy whether the action is brought in federal or state court."* (Emphasis supplied.)

If the § 1988 fee provision is part of the § 1983 remedy, as the Supreme Court held, it follows that the standards under § 1988 for determining when the fee should be awarded are likewise part of the § 1983 remedy.

■ Notwithstanding the above-discussed cases, the defendants urge that, because the plaintiffs asserted a state law cause of action and because they obtained relief on that state law ground, "[t]his case remained throughout its course a state law action ... [and] was not an action vindicating broad civil rights under 42 U.S.C. § 1983." (Brief, p. 8.) The plaintiffs' claim for an attorney's fee award, however, was not based on their state law cause of action but on their § 1983 cause of action. And it is undisputed that where a plaintiff asserts alternate grounds for the same relief, one under § 1983 and the other under state law or a provision of federal law carrying no authorization for attorney's fees, where he prevails upon the latter ground, and where there is no decision on the § 1983 ground, federal law ordinarily entitles him to an attorney's fee award if the § 1983 ground was substantial and grew out of the same facts. *Smith v. Robinson*, —— U.S. ——, 104 S.Ct. 3457, ——, 82 L.Ed.2d 746 (1984); *Maher v.*

*Gagne,* 448 U.S. 122, 130–131, 132 n. 15, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980); H.R.Rep. No. 94–1558, 94th Cong., 2d Sess., p. 4 n. 7 (1976). Under these circumstances, the attorney's fee is awarded not because the prevailing plaintiff was successful on the state law ground; instead, it is awarded because the prevailing plaintiff raised a substantial civil rights issue under § 1983. Consistent with its desire to promote private enforcement of federal civil rights,[8] "Congress' purpose in authorizing a fee award for an unaddressed constitutional claim was to avoid penalizing a litigant for the fact that courts are properly reluctant to resolve constitutional questions if a nonconstitutional claim is dispositive." *Smith v. Robinson, supra,* —— U.S. at ——, 104 S.Ct. at 3465.[9]

---

**8.** H.R.Rep. No. 94–1558, 94th Cong., 2d Sess., p. 1 (1976), sets out the purpose of the Civil Rights Attorney's Fees Awards Act of 1976 as follows:

"The effective enforcement of Federal civil rights statutes depends largely on the efforts of private citizens. Although some agencies of the United States have civil rights responsibilities, their authority and resources are limited. In many instances where these laws are violated, it is necessary for the citizen to initiate court action to correct the illegality. Unless the judicial remedy is full and complete, it will remain a meaningless right. Because a vast majority of the victims of civil rights violations cannot afford legal counsel, they are unable to present their cases to the courts. In authorizing an award of reasonable attorney's fees, H.R. 15460 is designed to give such persons effective access to the judicial process where their grievances can be resolved according to law."

*See also* S.Rep. No. 94–1011, 94th Cong., 2d Sess., pp. 2–4 (1976), U.S.Code Cong. & Admin.News 1976, 5908, 5909–5911.

**9.** H.R.Rep. No. 94–1558, *supra,* p. 4 n. 7, states:

"To the extent a plaintiff joins a claim under one of the statutes enumerated in H.R. 15460 with a claim that does not allow attorney fees, that plaintiff, if it prevails on the non-fee claim, is entitled to a determination on the other claim for the purpose of awarding counsel fees. *Morales v. Haines,* 486 F.2d 880 (7th Cir.1973). In some instances, however, the claim with fees may involve a constitutional question which the courts are reluctant to resolve if the non-constitutional claim is dispositive. *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). In such cases, if the claim for which fees may be awarded meets the 'substantiality' test, *see Hagans v. Lavine, supra; United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), attorney's fees may be

██ Finally the defendants rely on four cases in support of their position: *Still v. Personnel Bd. of Jefferson County*, 406 So.2d 860 (Ala.1981), *cert. denied*, 455 U.S. 1020, 102 S.Ct. 1718, 72 L.Ed.2d 139 (1982); *Zorick v. Tynes*, 372 So.2d 133 (Fla.App.1979); *Application of Roberts*, 291 Or. 21, 628 P.2d 714 (1981); *Boland v. City of Rapid City*, 315 N.W.2d 496 (S.D.1982). These cases, however, furnish no support for the defendants' position. In *Still*, an attorney's fee award was denied because the trial judge ruled against the plaintiffs on the asserted federal law grounds. As Justice Jones stated in his concurring opinion, 406 So.2d at 862: "Our holding is *not* premised on the mere affirmative grant of Plaintiffs' state grounds relief; rather, it is premised on the trial court's affirmative denial of federal grounds relief." [10] *Zorrick v. Tynes, supra*, similarly involved a ruling against the plaintiff on the federal grounds for relief. While *Application of Roberts, supra*, may contain some language arguably favorable to the defendants' position, that case was an original habeas corpus proceeding where the plaintiff had been represented by a state furnished attorney, where the plaintiff's attorney had not petitioned for the compensation, and where the court "cline[d] to exercise our statutory discretion to award attorney's fees in this case." 628 P.2d at 715.[11] In the last case

---

allowed even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of a 'common nucleus of operative fact.' *United Mine Workers v. Gibbs, supra* at 725 [86 S.Ct. at 1138]."

**10.** *See Davis v. Everett*, 443 So.2d 1232, 1235 (Ala.1983), and *Canterbury Nur. Home v. Ala. Health Etc. AG.*, 425 So.2d 1103, 1106 (Ala. 1983), in which the Supreme Court of Alabama reaffirmed the basis for the *Still* decision. In both the *Davis* case and the *Canterbury* case, the plaintiffs had prevailed on state law grounds; there was no ruling on their § 1983 grounds, and the trial courts denied attorney's fees. In both cases the Supreme Court of Alabama, applying the federal law substantiality test under § 1988, reversed the denial of attorney's fee awards.

**11.** Where a plaintiff prevails on his federal civil rights ground, or where he prevails on a different ground but the unresolved federal civil rights ground is based on the same facts and is substantial,

relied on by the defendants, *Boland v. City of Rapid City*, *supra*, the plaintiff expressly declined to assert a federal law claim in the state court action, stating that the federal law ground would be reserved for a later federal court suit. 315 N.W.2d at 502. Additionally the Court in *Boland* stated that, if 42 U.S.C. § 1983 had been invoked, the plaintiff would have failed to establish a cause of action under the federal statute. *Id.* 315 N.W.2d at 503.[12]

In conclusion, we find no basis for the defendants' principal argument in this case.

## III.

 We now turn to the defendants' alternate contention that the plaintiffs' asserted 1983 cause of action failed to meet the federal law standards for an attorney's fee

---

discretion to deny any attorney's fee award under § 1988 ordinarily exists only when there are "special circumstances present which, either individually or collectively, would render such an award unjust." *Canterbury Nur. Home v. Ala. Health Etc. AG., supra*, 425 So.2d at 1107. *See Smith v. Robinson, supra*, —— U.S. at ——, 104 S.Ct. at ——; *Milwe v. Cavuoto*, 653 F.2d 80, 82 (2d Cir.1981); *Kimbrough v. Arkansas Activities Ass'n*, 574 F.2d 423, 427 (8th Cir.1978); *Davis v. Everett, supra*, 443 So.2d at 1236; *Gumbhir v. Kansas State Bd. of Pharmacy*, 231 Kan. 507, 646 P.2d 1078, 1086–1087 (1982), *cert. denied*, 459 U.S. 1103, 103 S.Ct. 724, 74 L.Ed.2d 950 (1983); *Johnson v. Blum*, 58 N.Y.2d 454, 461 N.Y.S.2d 782, 448 N.E.2d 449, 451 (1983); S.Rep. No. 94–1011, *supra*, p. 4.

12. We have discovered one opinion, in an intermediate state appellate court, in which the court rejected the federal law standards and formulated its own test for the award of attorney's fees where a § 1983 ground was asserted but the plaintiff prevailed on some other ground. *Caputo v. City of Chicago*, 113 Ill.App.3d 45, 68 Ill.Dec. 843, 845, 446 N.E.2d 1240, 1242 (1983). This opinion is contrary to the multitude of cases throughout the country, both federal and state, which apply the federal law test set forth in the legislative history of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. *See* H.R.Rep. No. 94–1558, *supra*, p. 4 n. 7. Moreover, the *decision* in the *Caputo* case was not inconsistent with federal law; in that case "the trial court actually entered a finding against plaintiff on his federal constitutional claim." 446 N.E.2d at 1242.

award under § 1988 because the federal constitutional issue was insubstantial.[13]

■ "Substantiality," of course, is often a matter of degree. The standard for determining substantiality referred to in the previously quoted Report of the Committee on the Judiciary of the House of Representatives, *supra*, n. 9, is the standard used by the Supreme Court in *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), for deciding whether a federal constitutional issue is sufficiently meritorious to confer jurisdiction on a federal court under 28 U.S.C. § 1343(3), thereby allowing the court to entertain a state law claim as a matter of pendent jurisdiction. Under the *Hagans* standard, an issue is not deemed "insubstantial" unless it is " 'absolutely devoid of merit ... [or] 'wholly insubstantial' ... [or] 'obviously frivolous' ...

---

**13.** It should be emphasized that, in dealing with a request by a plaintiff for an attorney's fee award under § 1988, the need to examine the plaintiff's asserted federal civil rights cause of action, under the § 1988 standards of substantiality and common nucleus of operative facts, only arises where that federal civil rights ground was *unresolved* and the plaintiff either prevailed on some other ground or received relief through a settlement. Where the court actually decides the federal civil rights issue, and resolves it against the plaintiff, the plaintiff is *not* entitled to an attorney's fee award under § 1988 even though he may prevail on a state law ground. *See, e.g., Russo v. State of N.Y.,* 672 F.2d 1014, 1022 (2d Cir.1982); *Reel v. Arkansas Dept. of Correction,* 672 F.2d 693, 698 (8th Cir.1982); *Luria Bros. & Co., Inc. v. Allen,* 672 F.2d 347, 357–358 (3d Cir.1982); *Haywood v. Ball,* 634 F.2d 740, 743 (4th Cir.1980); *Huffman v. Hart,* 576 F.Supp. 1234, 1237–1238 (N.D. Ga.1983); *Still v. Personnel Bd. of Jefferson County, supra,* 406 So.2d at 862.

Consequently, in future cases where the federal civil rights issue can be resolved relatively easily in light of decisions of the United States Supreme Court or of this Court, Maryland circuit courts should consider deciding such issue even though a state law ground providing the requested relief is also being adjudicated in the plaintiff's favor. The decision on the federal civil rights issue will then ordinarily govern the entitlement to an attorney's fee award under § 1988. *See* Note, *Civil Rights Attorneys' Fees,* 130 U.Pa.L.Rev. 488, 517–519 (1981). On the other hand, when faced with an important constitutional issue which cannot be easily resolved, circuit court judges should normally follow the established policy of not deciding important constitutional questions unnecessarily. *See Rutherford v. Rutherford,* 296 Md. 347, 364 n. 6 (majority opinion), 366–367 (dissenting opinion), 464 A.2d 228 (1983), and cases there cited.

[or] 'plainly insubstantial' ... [or] 'no longer open to discussion.' " *Hagans v. Lavine, supra,* 415 U.S. at 536–537, 94 S.Ct. at 1378–1379. This standard, employed in the great majority of the cases involving a substantiality issue under § 1988, has been characterized as a "minimal test of 'substantiality.' " Wolf, *Pendent Jurisdiction, Multi-Claim Litigation, and the 1976 Civil Rights Attorney's Fees Awards Act,* 2 W. New Eng.L.Rev. 193, 239 (1979). Nevertheless, one court has said that "[g]rafting the *Hagans* standard onto the necessarily retrospective inquiry of whether a party has prevailed for purposes of section 1988 has scant support in logic." *Jackson v. Inhabitants of Town of Searsport,* 456 A.2d 852, 855 n. 13 (Me.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 95, 78 L.Ed.2d 101 (1983). *See Gumbhir v. Kansas State Bd. of Pharmacy,* 231 Kan. 507, 646 P.2d 1078, 1087 (1982), *cert. denied,* 459 U.S. 1103, 103 S.Ct. 724, 74 L.Ed.2d 950 (1983) (apparently rejecting the *Hagans* standard as the appropriate standard under § 1988.)

In the present case, however, it is unnecessary for us to explore further the appropriate standard for determining the substantiality of an unresolved § 1983 ground, when a plaintiff prevails on a state law ground but seeks an attorney's fee award under § 1988. Under any standard of substantiality, including the test of the *Hagans* case, the federal constitutional issue raised in the case at bar was wholly insubstantial. As stated by the Supreme Court in *Hagans,* a federal law ground is insubstantial "if ' "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." ' " *Hagans v. Lavine, supra,* 415 U.S. at 538, 94 S.Ct. at 1379. In light of the Supreme Court's decision in *Poelker v. Doe,* 432 U.S. 519, 97 S.Ct. 2391, 53 L.Ed.2d 528 (1977), the unsoundness of the plaintiffs' § 1983 ground for relief in this case is absolutely clear.

The theory of the plaintiffs' asserted § 1983 cause of action was that the executive order promulgated by the County Executive of Prince George's County, prohibiting the performance of abortions at hospitals owned or operated by the County except where necessary to save the life of the mother, interfered with a woman's right to choose to terminate her pregnancy, recognized in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). Four years after *Roe v. Wade* and *Doe v. Bolton,* however, the Supreme Court in *Poelker v. Doe* made it clear that a woman's right to choose to terminate her pregnancy did not require a government hospital to provide services for non-therapeutic abortions.

In *Poelker v. Doe,* an indigent woman sought unsuccessfully to obtain a nontherapeutic abortion at one of two city-owned hospitals in St. Louis, Missouri. The hospital's refusal to perform the abortion was both because of a directive of the Mayor of St. Louis, which prohibited the performance of abortions in city hospitals in the absence of a threat of grave physiological injury or death to the mother, and because of the practice of staffing the hospital with students and faculty from a Jesuit-operated institution opposed to abortion. The woman brought a class action under § 1983, alleging that the hospital's refusal to provide the abortion violated her federal constitutional rights. The United States Court of Appeals for the Eighth Circuit decided the case in favor of the plaintiff, *Doe v. Poelker,* 515 F.2d 541 (8th Cir.1975). The Court of Appeals directed that the trial court require the City to change its "antiabortion hospital policy" and "to obtain the services of responsible physicians and other necessary personnel whose personal views on abortion do not prohibit them from providing an abortion." 515 F.2d at 546. The Eighth Circuit's decision was based on two grounds. First, relying on its earlier decision in *Nyberg v. City of Virginia,* 495 F.2d 1342 (8th Cir.1974), *appeal dismissed for want of jurisdiction and cert. denied,* 419 U.S. 891, 95 S.Ct. 169, 42 L.Ed.2d 136

(1974), in which it had invalidated a prohibition of all non-therapeutic abortions at a city-owned hospital,[14] the Eighth Circuit in *Poelker* held "the city's policy prohibiting all nontherapeutic abortions in its publicly owned hospitals to be unconstitutional as an unwarranted infringement on pregnant women's right to privacy" recognized in *Roe v. Wade, supra.* *See* 515 F.2d at 546. Second, the Eighth Circuit held that providing other hospital services to indigent women, but not providing abortions, was "a denial of equal protection to indigent pregnant women." 515 F.2d at 546.

The United States Supreme Court, pointing out that the Eighth Circuit had relied both on *Roe v. Wade* and on an equal protection analysis, 432 U.S. at 520, 97 S.Ct. at 2392, reversed. The Supreme Court stated (*id.* at 521, 97 S.Ct. at 2392):

"[W]e find no constitutional violation by the city of St. Louis in electing, as a policy choice, to provide publicly financed hospital services for childbirth without providing corresponding services for nontherapeutic abortions."

Turning to the Eighth Circuit's emphasis on the Mayor's position against the performance of any nontherapeutic abortions in the two city-owned hospitals (whether the woman was indigent or not), the Supreme Court explained (*ibid.*):

"Although the Mayor's personal position on abortion is irrelevant to our decision, we note that he is an elected official responsible to the people of St. Louis. His policy of denying city funds for abortions such as that desired by Doe is subject to public debate and approval or disapproval at the polls. We merely hold, for the reasons stated in *Maher*, that the Constitution does not forbid a State or city, pursuant to democratic processes, from

---

**14.** *See also Nyberg v. City of Virginia,* 667 F.2d 754 (8th Cir.1982), *appeal dismissed for want of jurisdiction and cert. denied,* —— U.S. ——, 103 S.Ct. 3102, 77 L.Ed.2d 1358 (1983).

expressing a preference for normal childbirth as St. Louis has done."

The Court's holding in *Poelker*, that the Constitution does not forbid a state or local government from expressing a preference for normal childbirth instead of nontherapeutic abortions at government-owned hospitals, was absolutely dispositive of the plaintiffs' § 1983 challenge to the Executive Order in the present case.

The plaintiffs, at oral argument before us (although not in their brief), asserted two factual distinctions between the instant case and *Poelker*. First, the plaintiffs pointed out that the pregnant woman in *Poelker* was indigent, whereas Jane Doe was not indigent and was willing to pay for her abortion at the hospital owned and operated by the County. The only significance of this distinction is that the particular equal protection argument adopted by the Eighth Circuit in *Poelker*, but rejected by the Supreme Court, may not have been available to the plaintiffs in this case. The asserted distinction, however, is entirely irrelevant to the alternate basis for the Eighth Circuit's decision that the policy of the Mayor and hospital prohibiting *all* nontherapeutic abortions at city-owned hospitals was a violation of the constitutional right of privacy recognized in *Roe v. Wade*. The Supreme Court, in its opinion in *Poelker* and its reversal of the Eighth Circuit, clearly rejected this alternate ground for the Eighth Circuit's decision.

The other distinction which the plaintiffs pointed to between the present case and *Poelker* relates to an alleged difference in the funding of the government-owned hospitals involved in these two cases. The plaintiffs argued that the *Poelker* decision was based on the theory that the government need not fund abortions. They contended that this theory would be inapplicable in the present case because the revenues of the two hospitals owned and operated by Prince George's County are sufficient to meet the hospitals' operating expenses and, therefore, no county general funds are appropriated for the hospitals. In our view, there is no real distinction between the cases based on a differ-

ence in funding. While there appears to have been some controversy in the present case concerning the degree of self-sufficiency of the two county hospitals, it is undisputed that the Prince George's County treasury provided money for constructing the hospitals, and continues to provide funds necessary to amortize bond interest and principal. In addition, it appears that the County would have to appropriate general funds for any operating deficits the hospitals may have. Moreover, because Prince George's County owns and operates the two hospitals involved,[15] *any* financial transactions of the hospitals are, in reality, those of the County. When a woman pays for an abortion, those moneys become "county funds"; when staff is paid from operating revenues, they are paid out of "county funds." The two hospitals owned and operated by Prince George's County are clearly government-funded institutions. Nothing in the Supreme Court's *Poelker* opinion remotely suggests that a pregnant woman would have a constitutional right to have an abortion performed at a government-owned hospital if the hospital's fees were sufficient to meet operating costs but would have no such constitutional right if the hospital operated at a deficit and thus needed some general fund appropriations.

The Supreme Court in *Poelker v. Doe* flatly decided that the Constitution of the United States did not require a state or local government to provide nontherapeutic abortion services at a hospital owned and operated by the government. In light of this Supreme Court decision, the plaintiffs' § 1983 ground for relief in this case was wholly insubstantial. For this reason, the plaintiffs were not entitled to an attorney's fee award under 42 U.S.C. § 1988.

---

**15.** The management of the hospitals is the responsibility of the Department of Hospitals and Health Services and the Prince George's County Hospital Commission. Both of these are agencies of the executive branch of the Prince George's County government. *See County Exec., Prince Geo's Co. v. Doe,* 291 Md. 676, 682–685, 436 A.2d 459 (1981).

**466**

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. COSTS TO BE EQUALLY DIVIDED.