884 A.2d 789

**MARYLAND GREEN PARTY, et al.**

v.

**STATE BOARD OF ELECTIONS, et al.**

**No. 1911, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Oct. 7, 2005.

See also, 377 Md. 127, 832 A.2d 214.

**114**

Frank Dunbaugh of Annapolis, MD. (Mark Miller on the brief), of Greenbelt, for appellant.

Michael D. Berman (Judith A. Armold, Mark J. Davis, J. Joseph Curran, Jr., Attorney General on the brief, Baltimore, James C. Praley, on the brief), Glen Burnie, for appellee.

Argued before SALMON, DEBORAH S. EYLER and CHARLES E. MOYLAN, JR. (Ret'd, Specially Assigned), JJ.

DEBORAH S. EYLER, J.

In an action for declaratory and injunctive relief, the Circuit Court for Anne Arundel County granted summary judgment in favor of the State Board of Elections ("Board"), and against the Maryland Green Party ("Green Party"), ruling that certain statutes in the Maryland Election Code, Md.Code (2002), sections 1–101, 3–504, and 4–102 of the Election Law Article ("EL"),[1] and practices by the Board in implementing them were not unconstitutional under state or federal law.[2]

The Green Party appealed the circuit court's decision to this Court, but the Court of Appeals issued a *writ of certiorari* on by-pass. The Court of Appeals reversed the entry of summary judgment in favor of the Board, holding that certain of Maryland's election law statutes, and the application of others by the Board, violated the Maryland Constitution and Declaration of Rights. The case was remanded to the circuit court for entry of a declaratory judgment consistent with the opinion of the Court of Appeals.

Following entry of the new declaratory judgment, the Green Party filed a petition for attorney's fees and costs under the federal Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988. The circuit court granted the Board's motion to dismiss the petition, upon a finding that the Green Party was not a prevailing party under section 1988.

The Green Party noted a timely appeal, presenting six questions for review, which we have combined and re-

---

1. Previously Md.Code (1957, 1997 Repl.Vol., 2002 Supp.), Art. 33.

2. For ease of discussion, we shall refer to the appellees collectively as the "Board." The Board includes the State Board of Elections, Linda L. Lamone in her official capacity as its State Administrator of Elections, the Anne Arundel County Board of Elections, and Barbara L. Fisher, in her official capacity as its Election Director. We shall refer to the appellants collectively as the "Green Party." The Green Party includes the Maryland Green Party, David M. Gross, the David Gross for Congress Campaign Committee, various officers and members of the Green Party, including Alison Gibbons, Laurie Hauer, and David Isaac Opalinsky, and Maryland voters.

phrased: [3]

I. Did the circuit court err in dismissing the Green Party's petition for attorney's fees and costs upon a finding that it was not a prevailing party under section 1988?

II. Did the circuit court err in failing to consider the petition as to the Green Party's two related cases?

III. Did the circuit court err in granting the Board's motion to enlarge time to respond to, and bifurcate resolution of, the Green Party's petition?

For the following reasons, we shall vacate the decision of the circuit court and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEEDINGS

The Green Party became qualified as a statutorily recognized political party in Maryland on August 16, 2000. In order to achieve that status, the Green Party was required to obtain at least 10,000 signatures of registered Maryland voters on party-forming petitions. EL § 4–102.[4] It did so and submitted the petitions to the Board.

---

**3.** The questions as posed by the appellants are:

1. Did the circuit court err in dismissing the plaintiffs' civil rights fee petition by ruling that its 2001 summary judgment retained legal effect despite having been reversed by the Court of Appeals?

2. Did the circuit court use an erroneous legal standard to rule that the plaintiffs had not prevailed, where the Court of Appeals vindicated their state constitutional claims arising from the same facts as their substantial unadjudicated federal constitutional claims?

3. Did the circuit court err by entering an order of dismissal that is inconsistent with the opinion and mandate of the Court of Appeals?

4. Did the circuit court err (a) by failing to give effect to the presumption that attorneys' fees should be awarded to litigants who successfully vindicate civil rights; (b) by permitting the [Board] to delay resolution of the fee petition without cause shown; and (c) by allowing the fee petition to become the subject of protracted litigation?

5. Did the circuit court err by failing to consider attorney time billed for work on the related *Hufnagel* and *Stysley* cases?

6. Did the circuit court err in dismissing the fee petition by holding, in effect, that the Green Party's federal claims were without merit?

**4.** EL section 4–102 provides in pertinent part:

On June 20, 2000, the Green Party nominated one David Gross as its candidate for U.S. Representative from the First Congressional District. As required by EL section 5–703(e), the Gross campaign organized a second petition drive to obtain nominating petitions signed by 1% of registered voters in that congressional district, or 3,411 signatures.[5] The Gross campaign succeeded in obtaining 4,214 signatures and submitted the petitions to the Board.

During its verification process, the Board determined that over 1,000 of the signatures were of residents on the "inactive voter" list. On that basis, it rejected those signatures, leaving the Gross campaign short of the 1% required to appear on the ballot. As a result, Gross was declared ineligible to run as the Green Party's candidate for U.S. Representative for the First Congressional District.

On September 5, 2000, in the Circuit Court for Anne Arundel County, the Green Party filed a complaint against the Board for refusing to place Gross on the ballot. It sought declaratory and injunctive relief under the Civil Rights Act of 1871, 42 U.S.C. § 1983, including a temporary restraining order, arguing that the burden imposed by the 10,000 voter party-forming petitioning requirement, in EL section 4–102,

---

(a) *Formation.*—Any group of registered voters may form a new political party by: (1) filing with the State Board on the prescribed form a petition meeting the requirements of subsection (b) of this section and of Title 6 of this article;

\* \* \*

(b) *Requirements of petition.*—

\* \* \*

(2)(i) Appended to the petition shall be papers bearing the signatures of at least 10,000 registered voters who are eligible to vote in the State as of the first day of the month in which the petition is submitted.

**5.** EL section 5–703(e) states:

*Petition signatures requirements.* (1) A candidate who seeks nomination by petition may not have the candidate's name placed on the general election ballot unless the candidate files with the appropriate board petitions signed by not less than 1% of the total number of registered voters who are eligible to vote for the office for which the nomination petition is sought, except that the petitions shall be signed by at least 250 registered voters who are eligible to vote for the office.

and the 1% nominating petition requirement, in EL section 5–703(e), and the Board's actions in rejecting the signatures of voters on the "inactive voting" list violated its rights under state and federal laws. It based its arguments, *inter alia*, on the First, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution; Article I, sections 1 and 2 of the Maryland Constitution; and Articles 7 and 24 of the Declaration of Rights. It further argued that the petitioning requirements and Board practices violated international law and treaties of the United States.

After a hearing on September 8, 2000, the circuit court denied the Green Party's request for a temporary restraining order and injunction ordering that Gross's name be placed on the ballot. The November 7, 2000 election went forward without Gross's name on the ballot.

The Board proceeded to file a motion to dismiss the Green Party's complaint, or in the alternative, for summary judgment. On February 28, 2001, the circuit court denied the Board's motion to dismiss, but granted its motion for summary judgment. In its memorandum opinion, the circuit court ruled that the Green Party had not shown, as a matter of law, that Maryland's election laws were unconstitutional pursuant to the U.S. Constitution, the Maryland Constitution or Declaration of Rights, and various international treaties.[6]

The circuit court cited to Supreme Court precedent and noted that states are permitted to regulate elections so that order accompanies the democratic process. Administrative convenience is within the state's regulatory interests, which also include limiting the number of candidates on a ballot and requiring a showing of public support. The court further recognized that those regulatory interests "have supported nominating petition requirements similar to or more stringent than Maryland's 1% requirement" under EL section 5–703(e).

---

6. The circuit court also determined that the issues raised by the Green Party had not been rendered moot by the election, because they were "capable of repetition, yet evading review." *Storer v. Brown*, 415 U.S. 724, 737 n. 8, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974) (quoting *Rosario v. Rockefeller*, 410 U.S. 752, 756 n. 5, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973)).

The court concluded that, because the Supreme Court had upheld more stringent state law requirements, Maryland's 1% nominating petition requirement was constitutional, as a matter of law.

The Green Party took an appeal to this Court, but before we considered the case, the Court of Appeals issued a *writ of certiorari* on its own motion. In *Green Party v. State Board of Elections,* 377 Md. 127, 832 A.2d 214 (2003), the Court of Appeals reversed the circuit court's grant of summary judgment and remanded the case for entry of a new declaratory judgment consistent with its opinion. The decision was by a four-member majority, with three members concurring in part.

The majority, noting that the Green Party had raised numerous issues under federal and state laws, expressly limited its decision to state law grounds under the Maryland Constitution and the Declaration of Rights. It did not decide any of the issues raised under the federal Constitution or federal law.

The majority first addressed the issue of the "inactive" voters whose signatures the Board rejected when verifying Gross's 1% nominating petition. EL section 3–504 allowed for an "inactive voter" list and sanctioned removal for voters remaining on the list for a specified period of time.[7] Under EL section 1–101, these voters were excluded from categorization as "registered voters."[8] Accordingly, their signatures

---

7. EL section 3–504 provides:

(c) *Change of address outside the county.*—If it appears from information provided by the postal service or an agency specified in § 3–505(b) ... that a voter has moved to a different address outside the county, "the election director shall send the voter a confirmation notice informing the voter of his or her potential inactive status as described in subsection (f) of this section." Oral argument revealed that a conformation notice was sent by the Board in practice whenever a sample ballot was returned by the postal service. Section 3–504(f)(2) then required these voters placed on the inactive list to submit written affirmation that he or she remained a resident of the county.

8. EL section 1–101(mm) excludes an individual on the "inactive voter" list from the definition of "registered voter."

were not counted.[9]

The majority held that those laws and regulations directly conflicted with Article I, sections 1 and 2 of the Maryland Constitution and Article 7 of the Declaration of Rights, which are the exclusive Maryland authority on "the qualifications for voters and provide for a single uniform voter registration list which is conclusive evidence of the right to vote." *Id.* at 145. Additionally, the statutory scheme "unconstitutionally infringe[d] on the right of suffrage guaranteed to all qualified voters by Article I of the Maryland Constitution and Article 7 of the Maryland Declaration of Rights." *Id.* at 152.

The majority then addressed the 1% nominating petition requirement for minor party candidates. It held that the 1% nominating petition requirement "discriminate[d] against minor political parties in violation of the equal protection component of Article 24 of the Maryland Declaration of Rights." *Id.* at 156–57. It expressly limited its decision to state constitutional law grounds. It noted that, although it was not suggesting that the decision would be different under a federal equal protection analysis, " 'the federal and state guarantees of equal protection are obviously independent and capable of divergent application.' " *Id.* at 157 (citations and quotations omitted).

The concurring members agreed with the majority's holding that the "inactive voters" list laws violated the Maryland Constitution. They disagreed with the majority's holding that the 1% nominating petition requirement violated Article 24 of the Maryland Declaration of Rights. They noted that "the equal protection guarantees found in the federal constitution and Maryland's Declaration of Rights are considered 'in pari materia,' " so that federal caselaw is "instructive here." *Id.* at

---

EL section 6–203(b) provides that "[t]he signature of an individual shall be validated and counted if ... the individual is a registered voter in the county specified...."

**9.** COMAR 33.05.07.03(D) (2002) provides that "[i]n all events, the signature of the inactive voter may not be counted for purposes of the petition itself."

.

166 (citing *Attorney Gen. v. Waldron*, 289 Md. 683, 704, 426 A.2d 929 (1981)). They further noted that, in application, the Court of Appeals has consistently interpreted Article 24 to apply in the same manner as the Fourteenth Amendment.

The concurring members cited to various federal cases that held petition requirements constitutional, because "the State has a legitimate interest in regulating the quantity and quality of the candidates who appear on its ballots." *Id.* They distinguished the purpose behind the initial party-forming petition requirement for a minor political party from that behind the 1% nominating petition requirement for a minor political party candidate for office, commenting that the majority's analysis based upon the combination of the two petitioning requirements was in error. For those reasons, the concurring members concluded that Maryland's 1% nominating petition requirement for minor party candidates was supported by federal equal protection caselaw, and disagreed with the majority's opinion that it violated Maryland's state constitutional equal protection guarantee.

On January 12, 2004, on remand, the circuit court entered a declaratory judgment in favor of the Green Party, in accordance with the opinion of the Court of Appeals. The judgment declared unconstitutional the 1% nominating petition requirement, under Article 24 of the Maryland Declaration of Rights, and the deprivation of "inactive voters" of their right to vote, under Article I of the Maryland Constitution and Articles 7 and 24 of the Maryland Declaration of Rights.

Subsequently, on June 15, 2004, the Green Party filed a petition for attorney's fees and costs under 42 U.S.C. § 1988. It sought fees and costs incurred in this case and in two related cases, *Hufnagel v. State Board of Elections*,[10] and

---

**10.** Circuit Court for Anne Arundel County Case No. C–2002–82666–CR. Only the Green Party and David Opalinsky were plaintiffs in *Hufnagel* and in this case. Beth Hufnagel was nominated for the office of Comptroller of Maryland in 2002. The Board refused to place her on the ballot for similar reasons as the refusal of Gross. The Green Party filed suit against the Board in August 2002, in the Circuit Court for

*Stysley v. Carroll County Board of Elections.*[11] It sought $355,060 in attorney's fees and $3,071.31 in costs.

The Board filed a motion to enlarge time to oppose the Green Party's petition and a motion to bifurcate resolution of the Green Party's petition for separate determinations of whether attorney's fees and costs should be granted, and if so, in what amount. The Board asserted as its basis for the motion to enlarge time the complexity of the issues and the need for discovery and expert witnesses on the matter, particularly if the motion to bifurcate were denied. The circuit court granted both motions.

The Board then filed a motion to dismiss the Green Party's petition. The circuit court granted the motion on October 1, 2004. In its memorandum opinion and order, the court articulated the general rule, under section 1988, that prevailing parties ordinarily are entitled to attorney's fees and costs. The court found that, because the parties in *Hufnagel, Stysley,* and this case were different and the cases were not consolidated, the plaintiffs in *Hufnagel* and *Stysley* were not prevailing parties; therefore, the court refused to consider them in conjunction with the petition in the instant case.

The court then turned to the issue of whether the Green Party was a prevailing party under section 1988. It recounted the procedural history of the case: that it had decided all of

Anne Arundel County. The circuit court dismissed the case. On appeal, the Court of Appeals took *certiorari* and then remanded for further proceedings in accordance with its decision in *Maryland Green Party.* The *Hufnagel* case remains pending in the circuit court.

11. Circuit Court for Carroll County Case No. C–2002–36961. The *Stysley* case does not share any of the same parties with this case. George Murphy was nominated for a seat on the Carroll County Board of Commissioners in 2002. The Board refused to place his name on the ballot for similar reasons as the refusal of Gross. The Carroll County Green Party filed suit against the Carroll County Board of Elections in August 2002 in the Circuit Court for Carroll County. The Board intervened, and the circuit court denied Stysley's motion for preliminary injunction and the Board's motion to dismiss or for summary judgment. On appeal, the Court of Appeals took *certiorari* and then remanded, ordering that Stysley's name be placed on the ballot.

the Green Party's claims, including the federal claims that could support a section 1988 award, adversely to it, on summary judgment; that the Court of Appeals had reversed that judgment, but only on state constitutional grounds, and had remanded the case for entry of a new declaratory judgment consistent with the Court's opinion; and that, on remand, the Green Party filed its section 1988 petition. The court concluded that, under those circumstances, its original decision on summary judgment that the Green Party had failed, as a matter of law, to make out a federal constitutional claim, was undisturbed. Accordingly, the Green Party was not a prevailing party on its federal constitutional claim and hence did not qualify for an award of fees and costs under section 1988.

The Green Party filed a timely notice of appeal.

We shall include additional facts as necessary to our discussion of the issues.

## DISCUSSION

### I.

■ Section 1988 provides in pertinent part:

**(b) Attorney's fees**

In an action or proceeding to enforce a provision of sections 1981, 1981(a), 1982, 1983, 1985, and 1986 of [title 42 of the United States Code] ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs....

The Supreme Court has interpreted this statute to require an award of attorney's fees to a prevailing party in such an action or proceeding "unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

The statute does not address whether a party is a prevailing party, and hence may recover attorney's fees absent special circumstances, when, in an action alleging a federal constitutional violation *and* a state law violation, the party prevails only on his state law claim.

. Our Court of Appeals addressed this issue in *County Executive of Prince George's County v. Doe,* 300 Md. 445, 479 A.2d 352 (1984). The plaintiffs brought claims under section 1983 and state law, challenging an executive order promulgated by the defendants. The circuit court enjoined enforcement of the order on state law grounds. It did not decide the federal constitutional claim. On appeal, the Court of Appeals affirmed the decision of the circuit court and expressly declined to decide the federal claim.

The plaintiffs subsequently filed a motion in the circuit court seeking attorney's fees under section 1988. The court granted the motion and awarded attorney's fees to the plaintiffs. The defendants noted another appeal, asserting that the plaintiffs were not prevailing parties under section 1988 because they did not prevail on their federal claim.

The Court of Appeals explained that federal law governs awards of attorney's fees under section 1988. After discussing federal caselaw on the issue, the Court rejected the defendants' contention that attorney's fees could not be awarded to the plaintiffs because they had not prevailed on their federal claim. The Court recognized that the federal courts have construed section 1988 to allow a plaintiff to recover attorney's fees when he has asserted federal and state law claims for the same relief; has prevailed solely on the state claim, and the federal claim is undecided. *Smith v. Robinson,* 468 U.S. 992, 1006–07 & n. 10, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); *Maher v. Gagne,* 448 U.S. 122, 130–32 & n. 15, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). The rationale behind this interpretation is that the prevailing party should be compensated for raising a substantial civil rights issue under section 1983; and it would be unjust to " 'penaliz[e] a litigant for the fact that courts are properly reluctant to resolve constitutional questions if a nonconstitutional claim is dispositive.' " *Doe, supra,* 300 Md. at 457, 479 A.2d 352 (quoting *Smith, supra,* 468 U.S. at 1007, 104 S.Ct. 3457).

The *Doe* Court further explained that, under *Smith, supra,* 468 U.S. at 1002, 104 S.Ct. 3457, in such an "undecided claim"

situation, a three-part test applies in determining whether the plaintiff should be awarded attorney's fees. "[A] fee award pursuant to § 1988 is appropriate where (1) the § 1983 claim is sufficiently 'substantial' to support invocation of federal jurisdiction; (2) it arises from the same nucleus of operative facts as the claim on which the plaintiff prevailed; and (3) it is 'reasonably related to the plaintiff's ultimate success.' " *Am. Auto. Mfrs. Ass'n v. Cahill ("AAMA"),* 53 F.Supp.2d 174, 179–80 (N.D.N.Y.1999) (quoting *Smith, supra,* 468 U.S. at 1002, 1007).

The Court in *Doe* held that the plaintiffs' section 1983 claim was undecided for purposes of section 1988. It then proceeded to apply the three-part test and concluded that the plaintiffs were not entitled to attorney's fees because their federal claims were insubstantial.

In *Bangs v. Town of Wells,* 834 A.2d 955 (Me.2003), the Supreme Judicial Court of Maine addressed a similar issue. The plaintiffs appealed an adverse zoning board decision to the trial court, under section 1983 and state law. The trial court affirmed the decision, finding against the plaintiffs on the state and federal claims. On appeal, the Supreme Judicial Court reversed, finding in favor of the plaintiffs, solely on the state law ground. It did not address the section 1983 claim. On remand, the plaintiffs filed a petition for attorney's fees under section 1988, which was denied.

The plaintiffs appealed that decision. The Supreme Judicial Court of Maine reversed. It noted that the three-part test articulated by the Supreme Court in *Smith v. Robinson* applies only when a party has prevailed on a non-federal claim and no judgment was entered on his section 1983 claim. Noting that it expressly avoided deciding the federal constitutional claim because it was unnecessary to do so, the court applied the three-part test, and decided that the plaintiffs were prevailing parties, entitled to attorney's fees. Implicitly, therefore, the *Bangs* court held that the plaintiffs' section 1983 claim was undecided, for purposes of section 1988, when the trial court ruled against the plaintiffs on their federal claim

but the plaintiffs prevailed on appeal on a state court ground, with the section 1983 claim unaddressed at the appellate level.

Two trial court level cases are instructive. In *In re 244.5 Acres of Land,* 830 A.2d 845 (Del.Super.Ct.2003), the plaintiff filed suit seeking a declaratory judgment that it was not required to observe a setback or, alternatively, was entitled to compensation for an unconstitutional taking. A Delaware trial court granted summary judgment against the plaintiff on both federal and state grounds. On appeal, the appellate court reversed only as to state grounds and did not decide the federal constitutional claim. On remand, the plaintiff filed a petition for attorney's fees under section 1988. The trial court determined that the section 1983 claim fell into the " 'pleaded but undecided' " category. *Id.* at 847 (citations omitted). Applying the three-part test, it determined that the plaintiff could recover attorney's fees under section 1988.

A different result was reached in *AAMA, supra.* There, the plaintiffs filed suit in the United States District Court for the Northern District of New York to enjoin enforcement of a New York emission vehicle sales mandate under state law and federal constitutional law. The district court granted the defendants' motion to dismiss on all counts. The Court of Appeals for the Second Circuit reversed solely on state law grounds, without addressing the federal issues.

On remand, one of the plaintiffs filed a motion for attorney's fees under section 1988. The district court ruled that the federal constitutional claim it had dismissed, and that was not addressed by the appellate court, was "decided" for purposes of section 1988. It reasoned that to rule otherwise would allow parties to circumvent the general rule prohibiting recovery of attorney's fees by amending their state law claims to include meritless section 1983 claims; that the law of the case doctrine supported its position; and that any other result would place on the defendant the unfair burden of appealing an issue it had prevailed upon. Ruling in the alternative, the court concluded that, even if the section 1983 claim was "undecided," the plaintiff was not entitled to fees because,

under the three-part test, that claim was not reasonably related to the plaintiff's success.

### (i)

The threshold question in this case is whether the Green Party's section 1983 claim was decided, for purposes of section 1988, when it was determined adversely by the circuit court on summary judgment but, on appeal, was not addressed in the appellate opinion that reversed only on a state law ground. If (as the Board contends) the federal claim remained "decided" after the appeal, the Green Party is not a prevailing party and could not recover attorney's fees under section 1988. If (as the Green Party contends) the federal claim was "undecided" after the appeal, the Green Party could be a prevailing party entitled to recover attorney's fees upon satisfying the three-part test set forth in *Smith v. Robinson.*

In denying the Green Party's petition for attorney's fees under section 1988, the circuit court determined that its ruling granting the Board's motion for summary judgment on federal constitutional grounds was "decided" because it was left undisturbed by the Court of Appeals. The Green Party contends this ruling was legally incorrect. Specifically, it argues that, because the Court of Appeals reversed the circuit court's grant of summary judgment by addressing only state law grounds, the federal claims were no longer decided upon the filing of its fee petition.

The Board answers that the circuit court's ruling was legally correct. Specifically, it argues that the decision of the Court of Appeals to limit its reversal to state law grounds and to decline to address the federal law claims rendered the federal claims still decided.

■ A determination of prevailing party status is a question of law, which we review *de novo. Smyth ex rel. Smyth v. Rivero,* 282 F.3d 268 (4th Cir.2002).

We agree with the Green Party that the reversal by the Court of Appeals rendered the Green Party's federal section 1983 claim "undecided" for purposes of section 1988.

The case of *Robles v. Prince George's County,* 302 F.3d 262 (4th Cir.2002), on which the circuit court relied in determining that the Green Party's section 1983 claim was decided, is inapposite. There, the district court granted summary judgment adverse to the plaintiff on his federal claim. Following a jury verdict in favor of the plaintiff on his state law claim, the district court denied the plaintiff's petition for attorney's fees under section 1988. On appeal, the Fourth Circuit not only held that the plaintiff's federal constitutional rights had not been violated but also recognized that, at the moment the plaintiff filed his petition for attorney's fees, he had lost the federal issue on summary judgment in favor of the defendants. It is clear in *Robles* that the federal claim was decided.

Likewise, *County Executive of Prince George's County v. Doe, supra,* also relied upon by the circuit court, is significantly different procedurally from this case. In *Doe,* the circuit court did not rule at all on the plaintiff's federal claim. On appeal, the Court of Appeals affirmed the circuit court's judgment, solely on state grounds, and declined to address the federal claim. Clearly, then, when the section 1988 petition later was filed, the federal claim had never been decided by any court at any level, and therefore was undecided. *See S.W. Bell Tel. Co. v. City of El Paso,* 346 F.3d 541 (5th Cir.2003), and *Williams v. Hanover Hous. Auth.,* 113 F.3d 1294 (1st Cir.1997) (holding that section 1983 claims were undecided for section 1988 purposes when they were not decided by the district courts initially or the appellate courts on review).

The case at bar is most similar to the Supreme Judicial Court of Maine's decision in *Bangs, supra,* in which, after the trial court ruled against the plaintiffs on their federal and state claims, the appellate court reversed on state grounds only, without addressing the federal claims; and, ultimately, the appellate court held that the reversal of the trial court's judgment rendered the federal claims "undecided." It also is similar to *In re 244.5 Acres,* in which, after deciding state and federal claims adversely to the plaintiffs, and then having the appellate court reverse on the state claim only, without decid-

ing the federal claim, the trial court concluded that the federal claim was undecided for purposes of section 1988.

The *AAMA* case bears some similarity to this case, but also is distinguishable. There, the district court's adverse rulings on the federal claims were on non-substantive grounds that were unaffected, and could not be affected, by the appellate court's reversal on a state ground. The district court's adverse ruling on the federal due process claim was based on lack of standing, which other Second Circuit precedent had held eliminated the district court's power to award fees. Its adverse ruling on the federal commerce clause claim was based on *res judicata*, because the Second Circuit previously had decided the claim in another action. *AAMA, supra,* 53 F.Supp.2d at 181 n. 6.[12]

In the instant case, the reasons for the grant of summary judgment by the lower court were quite different from the reasons the district court in *AAMA* resolved the federal claims adversely to the plaintiffs. The circuit court here granted summary judgment because it found that the caselaw did not support the Green Party's claim under the state or federal constitutions. Such reasons are not in the same vein as those in *AAMA,* and therefore do not require us to decide this case in the same manner. Additionally, we have found helpful, by analogy, cases that analyze, under the collateral

---

**12.** Also, we do not find persuasive the other stated reasons in *AAMA* for ruling the decided federal court claims still decided, after reversal on state grounds. The risk that parties will add frivolous section 1983 (or other federal constitutional) claims to their state law claims merely to enable them to seek fees under section 1988 is low because, as we shall explain, a wholly insubstantial federal claim will not support a fee award under section 1988. The law of the case doctrine dictates that a lower court is bound by the decision in the same case made by the appellate court, *see Chesley v. Goldstein & Baron, Chtd.,* 145 Md.App. 605, 806 A.2d 296 (2002), *aff'd,* 375 Md. 244, 825 A.2d 985 (2003); it does not mean that decisions made by the lower court and not reviewed by the appellate court, because the appellate court exercised its prerogative to decide the case on another ground, necessarily remain decided. Finally, we see no real threat that parties who have prevailed below will be put in the impossible position of having to appeal from a successful outcome to protect against a possible future award of attorneys' fees, if the lower courts' determination is reversed on a state law ground.

estoppel doctrine, whether an issue of fact was "decided" in prior litigation.

■ A central concern in determining whether the doctrine of collateral estoppel will bar subsequent re-litigation of an issue is whether the issue was decided. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Kent County Bd. of Educ. v. Bilbrough*, 309 Md. 487, 489, 525 A.2d 232 (1987). Federal caselaw makes clear the general proposition that, when a lower court decides a case on multiple issues, and an appellate court decides only one issue and disregards the others, collateral estoppel will not bar re-litigation of the unreviewed issues; the doctrine only will apply to bar re-litigation of those issues specifically passed upon by the appellate court. *See Dow Chem. v. U.S. EPA*, 832 F.2d 319, 323 & n. 24 (5th Cir.1987) (noting, " 'The federal decisions agree that once an appellate court has affirmed on one ground and passed over another, preclusion does not attach to the ground omitted from its decision.' ") (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4421 (1981)); *see also Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 754 (2d Cir.1996); Restatement (Second) of Judgments § 27 cmt. o (1980).

Two rationales justify this policy. First, as the Court of Appeals explained in *Cook v. State*, 281 Md. 665, 381 A.2d 671 (1978):

> Considerations of fairness would seem to require that a prior determination of fact or mixed law and fact should not normally be treated as final, and hence binding, in a subsequent proceeding against a particular party, where the party against whom preclusion is sought was denied the opportunity, as a matter of law, to have the disputed issue decided by an appellate court on direct review.

*Id.* at 675, 381 A.2d 671. Second, the *Dow* Court explained, "The rule responds to the fear that the appellate court's choice of grounds may arbitrarily and unfairly preclude any review of

alternative grounds reached by the district court." *Dow, supra,* 832 F.2d at 323 n. 25 (quoting Wright, Miller & Cooper, *supra,* at § 4421).

Similarly, these cases justify our conclusion that the Green Party's federal claims are undecided for purposes of section 1988, because the Court of Appeals "passed over" those claims. It seems unfair to treat the circuit court's determination on the federal issues as binding and decided, after the Green Party was denied the opportunity to have those claims decided by the Court of Appeals because of its decision to consider only the state law claims. The Court exercised the restraint generally taken by state courts in choosing not to decide federal issues when state issues are dispositive. That decision, however, unfairly precluded, to the prejudice of the Green Party, its opportunity to have that Court evaluate the decision of the circuit court on the federal claims. The cases and policies surrounding collateral estoppel lend analogous support to our position that the Green Party's claims are undecided for purposes of section 1988.

Finally, the Board argues that the rationale behind section 1988, providing attorney's fees in cases where the federal claims are undecided, only applies when the state claim on which the plaintiff has prevailed is statutory, not constitutional. We disagree. The justification for permitting an award of attorney's fees in section 1988 cases when the plaintiff prevails on a state claim and a federal constitutional claim remains undecided, is "to avoid penalizing a litigant for the fact that courts are properly reluctant to resolve constitutional questions if a nonconstitutional claim is dispositive." *Doe, supra,* 300 Md. at 457, 479 A.2d 352 (quoting *Smith, supra,* 468 U.S. at 1007, 104 S.Ct. 3457). This policy similarly justifies application of the three-part test when the litigant prevails on a state constitutional claim and the federal constitutional claim remains undecided. Courts generally are as reluctant to decide federal constitutional questions when they can resolve a case on state constitutional grounds as they are to decide federal questions when they can resolve the case on state statutory grounds.

For these reasons, we hold that, when the Green Party filed its fee petition under section 1988, its section 1983 claim was "undecided."

## (ii)

The Green Party contends that, because its section 1983 claim was undecided, the circuit court should have applied the three-part test of *Smith v. Robinson* to determine an award of attorney's fees; and that it satisfies that test. Specifically, it argues that it raised a substantial federal claim of discrimination and burdens on federal constitutional rights, under section 1983; that its section 1983 claim was based on the same core facts as its state claim, namely, the circumstances regarding ballot access for Green Party candidates; and that its section 1983 claim was reasonably related to its ultimate success.

The Board counters that the Green Party cannot meet the three-part test. It maintains that the Green Party's section 1983 claim was insubstantial, because it did not have sufficient legal merit; the claim did not arise from a common nucleus of fact because the facts giving rise to liability under state law did not suffice to give rise to liability under federal law; and the factual claim was not reasonably related to the Green Party's success on the merits.

### Substantial Federal Claim

The parties disagree about the test that applies in determining whether a federal claim is "substantial" under section 1988. Relying on *Doe, Maher, supra,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653, and the seminal case of *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), the Green Party argues that the test for substantiality is whether the issue raised by the federal claim is not wholly insubstantial, plainly insubstantial, or obviously without merit. Relying on *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), and other federal cases, the Board argues that the wholly insubstantial test has

been superseded by a new test, which is whether the federal claim has legal merit.

We agree with the Green Party that the wholly insubstantial test enunciated in *Hagans, supra,* governs a determination of whether a federal claim is substantial for purposes of section 1988.

In *Buckhannon, supra,* the Supreme Court limited the catalyst theory, which held that courts could award section 1988 fees based on a private settlement or when the defendant had voluntarily changed his behavior in the absence of a judgment or court ruling. The Court did so because the theory "allow[ed] an award where there [was] no judicially sanctioned change in the legal relationship of the parties." *Id.* at 605, 121 S.Ct. 1835. The Court explained that was not the type of "legal merit" that it previously had found necessary for an award of attorney's fees. *Id.* The Court concluded that "legal merit" includes only "enforceable judgments on the merits and court-ordered consent decrees [because they] create the 'material alteration of the legal relationship of the parties' necessary to permit an award attorney's fees." *Id.* at 604, 121 S.Ct. 1835 (quoting *Texas State Teachers Assn. v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)).

The Court's discussion makes clear that, in requiring legal merit and rejecting the catalyst theory, it was addressing the third prong of the three-part test, or material alteration of the parties' legal relationship. It was limiting application of section 1988 by prohibiting an award of attorney's fees in cases in which a party received the desired result of its litigation through a voluntary change in the defendant's conduct rather than by a judgment on the merits or court order.

In briefly addressing the substantiality issue, in response to the dissent, the *Buckhannon* Court defined meritless to mean "it will never be determined...." *Id.* at 606, 121 S.Ct. 1835. It determined that the plaintiff was not a prevailing party because, although the defendant voluntarily changed its behavior, the Virginia legislature spoke before the district court

could consider the plaintiff's claims, and the court dismissed those claims as moot. The claims were meritless because they would never be determined.

*Smyth, supra,* also relied upon by the Board, similarly involved a meritless claim. In quoting *Buckhannon,* the Fourth Circuit found that the preliminary injunction granted in that case was not a court order, nor a judgment on the merits as required for prevailing party status. The court of appeals held that, because a legal determination was never and would never be made, the federal claim was meritless.

The Board last cites an unpublished opinion, *Voyeur Dorm, L.C. v. City of Tampa,* 2003 WL 23208270 (11th Cir.2003), and *Johnson v. City of Aiken,* 278 F.3d 333 (4th Cir.2002), for further support. Both cases are inapposite. In *Voyeur,* the plaintiff prevailed under a state ordinance, but lost on the federal constitutional claim; therefore, he was not a prevailing party and substantiality was not an issue. In *Johnson,* the issue was the amount of attorney's fees; the fact that plaintiffs were prevailing parties was not disputed, because they succeeded on their federal and state claims.

The Board, therefore, has offered no case that changes the substantiality test as set forth in *Hagans.* Our Court of Appeals in *Doe,* while not deciding the appropriate standard, noted that the wholly insubstantial test from *Hagans* is the majority rule, and has been rejected only by one court.[13] We will, therefore, determine whether the Green Party's federal constitutional claims were substantial under the *Hagans* test.

■ The issue in *Hagans* was whether the plaintiffs had presented a substantial section 1983 claim, allowing the district court to entertain jurisdiction over their equal protection and state statutory claims under 28 U.S.C. section 1343.[14]

---

**13.** The *Hagans* test was criticized by the Supreme Judicial Court of Maine in *Jackson v. Inhabitants of Town of Searsport,* 456 A.2d 852 (Me.1983), and was rejected by the Kansas Supreme Court in *Gumbhir v. Kansas State Board of Pharmacy,* 231 Kan. 507, 646 P.2d 1078 (1982).

**14.** Section 1343(3) provides:

The Court noted that section 1343 conferred jurisdiction upon the district court to entertain the constitutional claim only if it was of sufficient substance to support federal jurisdiction. If it was sufficient, then the district court could hear the state statutory claim as a matter of pendent jurisdiction.

In determining whether the federal constitutional claim was substantial, the Court noted that federal courts cannot hear cases otherwise within their jurisdiction if they are " 'so attenuated and unsubstantial as to be absolutely devoid of merit....' " *Id.* at 536–37, 94 S.Ct. 1372 (quoting *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579, 24 S.Ct. 553, 48 L.Ed. 795 (1904)). The Court further cited to *Ex Parte Poresky*, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933), for the proposition that a claim may be insubstantial if "it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.' " *Hagans, supra*, 415 U.S. at 537, 94 S.Ct. 1372 (quoting *Poresky, supra*, 290 U.S. at 32, 54 S.Ct. 3).

Elaborating further, the Court defined insubstantial as "wholly insubstantial, obviously frivolous, and obviously without merit." *Id.* (citations and quotations omitted). The Court opined that the words wholly and obviously have "cogent legal significance."

[T]hose words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims doubtful or questionable merit do not render them insubstantial for purposes of 28 U.S.C. § 2281. A claim is insubstantial only if "its unsoundness so clearly results from the previous decisions of this court as to foreclose the

---

To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States....

subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." *Id.* at 537–38, 94 S.Ct. 1372 (quoting *Poresky, supra,* 290 U.S. at 32, 54 S.Ct. 3).

We cannot say that the Green Party's federal claims in this case were wholly insubstantial or obviously frivolous. Even the four-member Court of Appeals majority in the first *Green Party* appeal was careful to note that it was not suggesting that the Green Party's claims would fail under the federal Constitution. We have not found any case directly on point or that has resolved this exact issue so as to foreclose its subject. The Green Party has cited cases that may lend support to its federal claim, which would render the claim substantial for purposes of section 1988. The Board also has cited cases that, even if they render the Green Party's claims doubtful, which we do not suggest they do, it acknowledges involve petitioning schemes different from Maryland's double petitioning requirement. Thus, this case is very different from *Doe, supra,* 300 Md. at 461–62, 479 A.2d 352 (holding the plaintiff's claim was insubstantial under any definition because that exact claim had been addressed and rejected by the Supreme Court). We conclude that under the very broad definition of substantial that applies to this area of the law, the Green Party's federal claims were substantial.

### Common Nucleus of Operative Fact

The Green Party contends its federal and state claims arose out of a common nucleus of operative fact because both involved discriminatory ballot access practices by the Board that prevented Gross's name from being placed on the ballot in 2000. The Board answers that the claims did not arise from a common nucleus of operative fact because the legal standards of an equal protection analysis differ between the state and federal constitutions, and the facts that gave rise to liability under the state claim would not suffice under the federal Constitution.

The Board's analysis is essentially an extension of its substantiality argument. It does not dispute that the federal and

state claims both were based on the denial of ballot access to Gross and the Green Party. Instead, the Board argues that the standard for determining whether claims share a common nucleus of fact has been changed from that prescribed by the Supreme Court in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), discussing pendent jurisdiction.

The Board relies upon *McClain v. NorthWest Community Corrections Center*, 323 F.Supp.2d 834 (N.D.Ohio 2004), and *Gumbhir, supra*, in support of its position. Although the court in *McClain* appeared to base its decision on failure to show a common nucleus of operative fact, it cited to cases wherein the plaintiff's federal claims were decided against it, suggesting that its decision actually was based upon insubstantiality because the plaintiff could not have prevailed on its federal claims. In *Gumbhir*, the court did not base its decision on a common nucleus of fact, but performed its own federal equal protection analysis in concluding that the federal claim was insubstantial.

The Court of Appeals in *Doe* recognized that *Gibbs* is the leading authority in deciding whether claims share a common nucleus of operative fact, which requires the unresolved federal claim to be based upon the same facts as the state claim upon which the plaintiff prevailed.

The Board does not suggest, nor is there room for suggestion, that the Green Party's federal claims were not based upon the same facts as its state claims. It is evident that both claims were based on exactly the same facts, namely, denial of ballot access to Gross and the Green Party, and therefore the federal claim arose from the same nucleus of operative fact.

### Reasonably Related to Ultimate Success

Neither party directly addresses this part of the test in its brief. It has been phrased by the courts in two different ways: (1) as requiring that the federal claim be "reasonably related to the plaintiff's ultimate success," *see AAMA, supra*, 53 F.Supp.2d at 180, and (2) as requiring that the relief

granted to the plaintiff result in a material alteration of the legal relationship of the parties. *Bangs, supra*, 834 A.2d at 958 (citations omitted). We will address both interpretations.

The district court in *AAMA* looked to the form of relief that was granted to the plaintiff on its state law claim in comparison to the relief that would have been granted had it prevailed on its federal constitutional claim. The court held that the federal claim was not reasonably related to the plaintiff's success because the injunction that it obtained against the defendant in prevailing on its state law claim was a far narrower form of relief than having the law declared unconstitutional and illegal, which would have resulted had the plaintiff prevailed on its federal claim.

In the case at bar, the Green Party received the same relief that would have been granted had it prevailed on its federal constitutional claim—the challenged Election Law Article statutes were declared unconstitutional and the Board was prohibited from applying them in a discriminatory manner. For those reasons, the Green Party's federal claims were reasonably related to its ultimate success.

The *Bangs* court, relying upon *Buckhannon, supra*, defined material alteration to require a plaintiff to receive "at least some relief on the merits of his claim." *Bangs, supra*, 834 A.2d at 958–59. The Green Party did receive relief on the merits of its claim through the opinion of the Court of Appeals, which held Maryland's double petitioning requirement unconstitutional, and the entry of that order by the circuit court. The relationship of the parties was, therefore, materially altered.

For those reasons, we hold that the Green Party is a prevailing party for purposes of section 1988, and therefore is entitled to an award of attorney's fees.[15] Accordingly, we shall vacate the judgment of the circuit court and remand the case

---

**15.** There has been no suggestion by the Board that this case presents special circumstances that would render such an award unjust. *See Newman, supra*, 390 U.S. at 402, 88 S.Ct. 964.

for a hearing to determine the amount of the award under section 1988.

## II.

■ The Green Party next contends that the circuit court erred in refusing to consider its petition for attorney's fees as to the related cases of *Hufnagel* and *Stysley*, because those cases involved tasks directly related to the Green Party's success in the instant case, and the cases share some of the same parties.

The Board contends that the circuit court was correct in refusing to consider the Green Party's petition with respect to the *Hufnagel* and *Stysley* cases because the majority of the parties are not the same and are not parties to this case, and the cases were not consolidated.

We agree with the Board's position, that the Green Party cannot request attorney's fees for the parties in the two related cases, as they are not parties to this litigation.

The Supreme Court has made clear that, under section 1988, it is the prevailing *party* that is eligible for attorney's fees, and not the lawyer. *Venegas v. Mitchell*, 495 U.S. 82, 87, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990). Further, the United States District Court for the District of Maryland, in *Rhoads v. FDIC*, 286 F.Supp.2d 532 (D.Md.2003), in holding that an attorney lacks standing to request attorney's fees under section 1988, declared that " 'a claim for such an award must itself be made by the party rather than the attorney.' " *Id.* at 542 (quoting *Brown v. Gen. Motors Corp.*, 722 F.2d 1009, 1011 (2d Cir.1983)). The *Brown* court discussed the rationale behind prohibiting attorneys from requesting their own fees, including congressional intent, duty of loyalty concerns, and consistency with the principle that fee awards also cannot be assessed against attorneys.

The Green Party argues that these principles are irrelevant, because it is the Green Party, as the prevailing party, not its attorneys, requesting fees for the work performed in the two related cases. This argument is largely without merit. The

*Stysley* case does not share any plaintiffs with the case at bar. The *Hufnagel* case has only two parties in common with the instant case: of the five plaintiffs in *Hufnagel*, only two were also parties to this case; of the six plaintiffs in this case, four were not parties to *Hufnagel*. It appears that the attorneys in the instant case are attempting to request their own attorney's fees for work they performed on the two related cases under the guise of a request by the Green Party. The attorneys lack standing to make such a request in the case at bar.

Additionally, in the federal cases awarding attorney's fees to plaintiffs in related cases, the cases were consolidated. *See, e.g., NAACP v. Civiletti*, 609 F.2d 514 (D.C.Cir.1979) (cases consolidated for trial and request of the fee award); *Rybicki v. State Bd. of Elections of Ill.*, 584 F.Supp. 849 (N.D.Ill.1984) (cases consolidated for trial and appeal, and each plaintiff separately requested fees); *Vaughns v. Bd. of Educ. of Prince George's County*, 598 F.Supp. 1262 (D.Md.1984) (each plaintiff separately requested fees and cases were consolidated for appeal). The *Hufnagel* and *Stysley* plaintiffs never have requested attorney's fees in their related cases, nor have the cases ever been consolidated with the instant case.

Last, in the *Rybicki* case, the United States District Court for the Northern District of Illinois addressed the issue of whether a plaintiff may receive a fee award if work performed on his case was a catalyst in obtaining relief in two related cases, which were consolidated for trial. The district court answered that question in the negative, and declined to grant the plaintiff an award of attorney's fees based on the success of the plaintiffs in the other consolidated cases. Similarly, we will not permit the *Hufnagel* and *Stysley* plaintiffs to recover attorney's fees in this case, claiming that they acted as catalysts to the Green Party's success.

For those reasons, we shall hold that the circuit court did not err in refusing to consider the Green Party's fee petition as to the *Hufnagel* and *Stysley* cases.

## III.

■ The Green Party last contends that the circuit court erred in granting the Board's motions to enlarge time to respond to, and to bifurcate resolution of, its petition for attorney's fees. Specifically, it argues that the Board failed to show cause for its enlargement motion and that the circuit court's actions resulted in an impermissible lengthening of the proceedings. The Board did not address this issue in its brief.

We shall review the circuit court's grant of the Board's motions for abuse of discretion. *See Myers v. Celotex Corp.,* 88 Md.App. 442, 594 A.2d 1248 (1991); Md. Rule 1–204, 2–502 (2004).

Rule 2–502 states:

> If at any stage of an action a question arises that is within the sole province of the court to decide, whether or not the action is triable by a jury, and if it would be convenient to have the question decided before proceeding further, the court, on motion or on its own initiative, may order that the question be presented for decision in the manner the court deems expedient.

The circuit court found that it would be most expedient to determine the legal issue of whether the Green Party was a prevailing party before determining the amount of any attorney's fee award. The amount of the attorney's fee award hinged on resolution of the legal issue in the Green Party's favor, thus obviating the need to consider the issue if it determined that the Green Party was not a prevailing party. We do not find that the circuit court abused its discretion in granting the Board's motion to bifurcate.

■ Rule 1–204(a) states:

**Generally.** When these rules or an order of court require or allow an act to be done at or within a specified time, the court, on motion of any party and for cause shown, may (1) shorten the period remaining, (2) extend the period if the motion is filed before the expiration of the period originally prescribed or extended by a previous order. . . .

 The Board cited as its basis for requesting an enlargement of time the complexity of the legal and factual disputes in the case and the need for additional discovery and memoranda. In granting the motion, the circuit court found that the Board had shown cause for the extension, and we do not find that the circuit court abused its discretion.[16]

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEES.**

---

**16.** We have exercised our discretion to deny the Board's motion to strike the Green Party's reply brief for untimeliness and for being "oversized" in that it includes numerous lengthy footnotes. The defects have had no impact on our resolution of the issues presented. As a general proposition, however, we admonish against the overuse of lengthy footnotes, because they can be a means of sidestepping the page limit requirements in the Rules. We note also that they tend to be more distracting than edifying.